GARNER ROBINSON, County Trustee, etc.

*v.*

C. BEVERLY BRILEY, Mayor Elect, etc., et al.

374 S.W. 2d 382

(*Nashville,* December Term, 1962.)

Opinion filed June 4, 1963.

ELKIN GARFINKLE, Nashville, for appellant.

GILBERT MERRITT, JR., Assistant Metropolitan Attorney, Nashville, for appellees.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This cause originated by the filing of a bill in Chancery Court for a declaratory judgment in which the County Trustee questions the construction to be put on certain

phases of the Metropolitan Charter as well as the constitutionality of certain provisions in the Metropolitan Charter.

The questions submitted are stated in the appellant's assignment of error and brief thus:

"No. I: Does the County Trustee retain and disburse funds collected by him as required by general law or is he required to remit daily to the Metropolitan Treasurer all taxes or tax equivalents as provided by the Charter?

"No. II: Does the County Trustee have the power to retain the fees accruing to his office, pay salaries and other expense and remit the surplus fees semiannually as required by general law or does the provision of the Metropolitan Charter requiring him to turn over taxes collected daily, include the fees accruing to his office?

"No. III: Has the County Trustee the power and authority to employ deputies and other employees as provided by general law or is his power limited to deputies only; and, is the employment of other employees delegated to others, as provided by the Charter?

"No. IV: Is the County Trustee compelled to take in his employ, persons transferred from the City of Nashville as provided by Section 20.06 of the Metropolitan Charter?

"No. V: If the placing of such employees not chosen by the Trustee is a legal requirement, is the County Trustee responsible for the actions of such persons or is his liability limited to those selected by him?"

After a thorough hearing and consideration of the matter the Chancellor in an excellent memorandum opinion resolved all of the issues in favor of the Metropolitan Charter and contrary to the position taken by the County Trustee. An appeal was prayed and seasonably perfected, briefs filed and able arguments have been heard. After considering the matter we now have it for disposition.

Much of the argument by the appellant in favor of the contentions above made were answered, at least in principle, in the case of *Frazer v. Carr*, 210 Tenn. 565, 360 S.W.2d 449, wherein the Charter was approved and the Acts creating it were held constitutional. Subsequent to this case, this Court in *Winter v. Allen*, 212 Tenn. 84, 367 S.W.2d 785, opinion released for publication on May 10, 1963, answers some of the questions above raised. In order not to repeat too much we in answering the assignments herein in this opinion will merely refer to those two cases for our reasons and conclusions on certain questions here presented.

As pointed out in the Carr case, the General Assembly pursuant to provisions of Article 11, sec. 9, of the Tennessee Constitution passed a general law which is codified as sec. 6-3701 et seq., T.C.A., authorizing consolidations. This general law, sec. 6-3702, T.C.A., reads in part, as follows: "* * * after said consolidation no officer or agency of said county or of said municipal corporation shall retain any right, power, duty or obligation unless this chapter or the charter of the metropolitan government shall expressly so provide, or unless such retention and continuation be required by the Constitution of Tennessee." Following this, sec. 6-3711(p), T.C.A., requires that the Metropolitan Charter provide: "For such ad-

ministrative departments, agencies, boards and commissions as may be necessary and appropriate to perform the consolidated functions of city and county government in an efficient and coordinated manner and for this purpose for the alteration or abolition of existing city and county offices, departments, boards, commissions, agencies and functions, except where otherwise provided in this chapter or prohibited by the Constitution of Tennessee.''

Under this general act the duties of the County Trustee were altered to a certain extent. Some of the functions of the office, which County Trustees theretofore had done, were changed. Of course, prior to the creation of this Metropolitan Government the County Trustee was governed by a general law applicable to all counties in the State, and, as such, he was both the County Tax Collector and the Custodian of the County Funds. In other words he was the County Treasurer and the County Tax Collector. Some years ago the City of Nashville put into effect a different scheme of operation and had a different finance and accounting system separating the job of Controller, who collected taxes, from the job of the Treasurer, who was responsible for the custody and disbursement of all funds belonging to the City. Under this new Charter of the Metropolitan Government this last system, which had been formerly used by the City, was adopted. Under this new Charter the office of Metropolitan Treasurer is created (sec. 8.106) and provides that the Treasurer, not the Trustee, is responsible for the custody and disbursements of funds coming into this new government. The duties of the Trustee are established by sec. 8.116 of the Charter. Among other things this Section provides that the County Trustee shall be

elected for a term of four years, as provided by the general law for Trustees generally; he shall be furnished with Deputies, personnel, materials and supplies, etc., that he may need for the functioning of this office. It also provides that the Deputies appointed by him as approved by the court as any other Deputies of any other Trustee shall have powers, duties, and liabilities as Trustee. It is also provided that all other employees of the Trustee, other than these Deputies, who are appointed and approved by the court, shall be employed according to Civil Service Regulations; and then it is provided in this same section that the Trustee shall collect and receive real and personal property taxes, merchants' ad valorem taxes, and everything else of that kind due the Metropolitan Government for General Services District and Urban Services District. Then follows one of the particular flies in the ointment as far as Trustee is concerned, and that is that he shall remit to the Metropolitan Treasurer daily in certain regards, and then his authority which is given under the general law is again conferred upon him except as otherwise provided by this Metropolitan Charter.

As said above this Charter and its provisions except as herein questioned have been passed upon in the Carr case, supra. It is the very able contention of the Trustee that the Constitution of Tennessee prevents the elimination of the Trustee's responsibility for the custody and disbursement of the Metropolitan Funds, and to his right to retain the fees of his office because these functions became embedded in our Constitution as they had functioned in North Carolina, since the Section of our Constitution was adopted from North Carolina, and that as a result of that fact the Constitution creating the office

of County Trustee in Article 7, sec. 1, has been violated. This argument was answered many years ago in the Anti-Fee Bill case of *Hunter v. Connor,* 152 Tenn. 258, 277 S.W. 71. Of course, we all remember this Anti-Fee Bill drastically changed the system of operation at the adoption of our Constitution of 1870, and it was pointed out in that case that this Act deprived the officials of their fees and regulated their compensation. It was said, "The legislators, in the exercise of their governmental power, transferred the fees of all county officers to the county treasury, and substituted as compensation a maximum salary, determined by the population standard, commensurate with the responsibility and service, providing that the salary should be derived from fees paid into the office, and should not exceed in any event the aggregate earned by the office." The Court then concluded that the Legislature in their discretion had this right.

This case, the Connor case, is contrary to that of *State ex rel. Hays v. Cummins,* 99 Tenn. 667, 42 S.W. 880, decided just before the beginning of this century, and is the principal case relied upon by the appellant here. In this Cummins case the Sheriff was deprived of his privileges of operating the jail and in that case that was held unconstitutional. This Cummins case and others are cited in the Winter case, mentioned supra, as well as some later cases. Clearly, the Cummins case should now be confined solely to the particular facts of that case. Our Constitution only creates the office of Trustee and does not set up in any way the rights and prerogatives of that office.

We find nothing in the Constitution or in this provision regarding the Trustee which indicates that the framers

of our Constitution intended to place upon the people of the State forever legislation relating to a Trustee which was in effect a hundred years or more ago or any other time prior to the present legislation.

■ Clearly, the Constitutional Convention in 1953 in enacting the provision of Article 11, sec. 9, intended to allow the abolition of local elective officers created by the Constitution where that was necessary, and the provision provides in itself "the consolidation of any and all" of the functions of local government and this would certainly include consolidation of the office of the Trustee and other officers where deemed necessary.

The clear language of sec. 8.116 of the Charter requires the Trustee to remit daily to the Metropolitan Treasurer as above said. The sole duty of the Trustee under the Charter is to collect proper taxes or tax equivalents. This is evidenced by the language of this Section. This Section provides in effect that after collecting these taxes or its equivalents the Trustee "shall daily remit the same to the Metropolitan Treasurer." Clearly, the Trustee would not be remitting the same if he remits taxes collected less amounts for commissions, therefore it seems to us that the lower court gave these words their natural, logical meaning and we sustain this finding.

■■ It is argued that the Charter provision which requires the Trustee to remit daily all these funds and which relieves the Trustee of other functions and transfers the function of keeping and disbursing funds to the Metropolitan Treasurer conflicts with the general law. The Charter provisions were adopted, as shown by the Carr case, pursuant to this Metropolitan Act, and is constitutional. Of course, it would be impossible to con-

solidate any local governmental functions if all of the earlier general laws establishing unconsolidated municipal and county agencies are applicable to counties adopting Metropolitan Government. The argument here advanced is answered fully in the Carr case and the Winter case, and we see no necessity of further commenting on this fact.

The arguments set forth in Items III and IV of the appellant's contentions in the outset of this opinion are to the effect that the lower court erred when he sustained the validity of sec. 8.116 and sec. 20.06 of the Charter requiring employees other than Deputies to be employed according to Civil Service Regulations and permitting the transfer of these employees to the Trustee's office. These Charter provisions, it is contended, conflict with the general law. As said above, this is answered in the Carr and the Winter cases. The Chancellor answered this argument in a rather forceful manner when he said:

"To me there is a most logical and reasonable basis for the change. The Trustee and the County Court Clerk furnish the life blood for the Metro Government by collecting the taxes which it has to have. The other agencies complained about are part of the Judicial System of the State and are not daily tax collection agencies. The County Registrar is merely a recorder of instruments. The functions of these agencies are not vital to Metro's daily financal operation."

He then quotes from the brief of those supporting the Metropolitan Government which is to the effect that these changes are pure common sense and are necessary to make a combined government thus function, and that such

changes and requirements are a reasonable classification and do not violate the principles of equitable protection and due process.

◼ Lastly it is argued that these provisions requiring him to remit daily and establish Civil Service for all employees other than those Deputies appointed by him are so arbitrary that they violate the due process clause. There is really no principle of due process or equal protection which prevents differences in method of procedure for administering agencies of local governments. The elected official has no vested right to the particular set of administrative procedures used by the office next door to him in the court house or down the hall. It is true the various office holders that are working there will argue pro and con and very vociferously that they are entitled to the same thing as John Doe has in the other office, etc. The principles of due process though and equal protection do not impose restriction upon legislation establishing administrative procedures of counties, municipalities and other subordinate agencies, when such legislation affects the subordinate agency in its governmental capacity. See *Robertson v. Town of Englewood*, 174 Tenn. 92, 123 S.W.2d 1090.

Counsel for the Metropolitan Government make a very fine and convincing argument to us of the correctness and reasonableness of the Chancellor's decree herein when he says:

"Moreover, in view of the fact that the Trustee's office is a part of the finance and accounting system of the new government, it is reasonable that the method of selecting its employees and its accounting procedures should follow the practices of other finance and

administrative offices rather than the practices followed by the offices of the Register and County Clerks. The offices of the Register and County Clerks function independently of the finance and administrative system of Metropolitan Government. Their duties are completely different from the duties of the office which must collect the funds for the operation of Metropolitan Government. While these offices are independent and need not be integrated with the administrative offices of the new government, it is not only reasonable but wise that the Trustee's office follow a different procedure.

After a thorough consideration of the questions herein presented and particularly for reasons given in the Carr case for upholding the constitutionality of this Metropolitan system of government and those so well stated in the Winter case specifically answering certain questions here, we must affirm, and do affirm, the opinion of the Chancellor herein.