S. McPheeters Glasgow, Jr., et al.

*v.*

John Fox et al.

383 S.W.2d 9.

(*Nashville,* December Term, 1963.)

Opinion filed August 28, 1964.

Petition for Rehearing Denied September 24, 1964.

GILBERT MERRITT, JR., Nashville, for appellants.

JACK NORMAN, SR., ELKIN GARFINKLE, Nashville, for appellees.

Mr. Justice Felts delivered the opinion of the Court.

This bill was brought by the Commissioners of Elections of Davidson County under the Declaratory Judgments Act, seeking a decree declaring that the office of constable, held by defendants, has been abolished by consolidation of the County of Davidson and the City of Nashville into the new Metropolitan Government; or, in the alternative, that there should be only three constables elected, two from the Urban Services District and one from the General Services District.

Answer was filed, and the case heard on the bill, answer and stipulation of fact, including the Metropolitan Charter. The Chancellor entered a decree declaring that the office of constable was not abolished, but that since this consolidation reduced the number of civil districts in the county to two (one embracing the area of the former city of Nashville, and the other the rest of the county), only three constables should be elected, two from the former, and one from the latter.

Complainants appealed from that decree,[1] and insist that the Chancellor should have held the office of constable had been abolished; that this was done under Article 11, Section 9 of our Constitution, permitting the Legislature to provide for consolidation of functions of county and city governments; by the Legislative Act of 1957 (T.C.A. sec. 6-3701 et seq.), providing for such consolidation; and by the adoption of the charter consolidating the county and the city.

The office of constable is of ancient origin, and comes to us as part of our heritage of the common law. In Eng-

---

[1] Meanwhile, they held the Democratic Primary election in March, and the regular general election in August 1964, for the three constables, according to the decree.

land, he was "conservator of the King's Peace" (1 Blackstone's Commentaries, 355 et seq.), and the office was continued in each of our Constitutions. Our present Constitution (Art. 6, Sec. 15) provides that the Legislature shall divide each county into civil districts and that:

"There *shall be* two Justices of the Peace and one Constable elected in each district by the qualified voters therein, except districts including County towns, which *shall elect* three Justices and two Constables" (italics ours).

This office is provided for by the general law of our State; our statutes prescribe the qualifications, term of office, duties (T.C.A. secs. 8-1001-1017), and fix the constable's compensation (T.C.A. sec. 8-2133). T.C.A. sec. 8-1008 provides that a "constable shall take an oath [of office] that he will well and truly *serve the state* in the office of constable; that he will cause *the peace of the, state* to be kept, to the best of his power," and that he will do the other duties set out (italics ours).

Besides his common law power and authority as conservator of the peace (T.C.A. sec. 8-1009), many other statutory duties are imposed upon him, such as executing process, waiting on the court and the grand jury, enforcing attendance of witnesses, destruction of gambling devices, etc. (T.C.A. secs. 8-1008 to 8-1016; 39-2009).

Under the above provision (Art. 6, Sec. 15) of our Constitution, this Court has held that a constable is a constitutional office like that of sheriff, trustee, and register (Constitution, Art. 7, Sec. 1), and that none of these offices can be abolished by the Legislature. *State ex rel.*

*Hays v. Cummins,* 99 Tenn. 667, 42 S.W. 180; *The Redistricting Cases,* 111 Tenn. 234, 250, 290, 80 S.W. 750.

In *The Redistricting Cases,* supra, the Court said that these provisions were similar to the "clause [Art. 6, sec. 1] providing for one Supreme Court" (111 Tenn. 250, 80 S.W. 752); and that not one of these constitutional offices "can be abolished by the Legislature" (Id., 290, 80 S.W. 763). In the Cummins case, it was held that the sheriff, being a constitutional officer, cannot be deprived of any substantial part of the functions of the office. *Winter v. Allen,* 212 Tenn. 84, 376 S.W.2d 785, 789.

In *State ex rel. v. Slagle,* 115 Tenn. 336, 89 S.W. 326, it was held that a constable and a deputy sheriff are state officers within the constitutional provision (Art. 2, Sec. 26) that no person may hold more than one lucrative office at the same time in the state government; while a member of the board of education is not such an officer. *Boswell v. Powell,* 163 Tenn. 445, 43 S.W.2d 495. In the latter case, Chief Justice Green said:

"We are referred to *State ex rel. v. Slagle,* 115 Tenn. 336, 89 S.W. 326, in which it was held that tenure of the office of deputy sheriff was incompatible with tenure of the office of constable. We think, however, that a sheriff and constable, while elected by the voters of the particular county, are both *essentially state officers. The chief duties of both are to enforce the laws of the state. Both are constitutional officers.* Article 7, sec. 1, Article 6, sec. 15" (italics ours) (163 Tenn. 448, 449, 43 S.W.2d 496).

Such was the organic and statute law of this State respecting the office of constable when the provision of

the 1953 (8th) amendment, invoked by appellants, was added to Article 11, Section 9 of our Constitution. That amendment, so far as here material, is as follows:

"The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located; provided" (such consolidation is approved by a vote of the people in the county and in the city).

Under this provision, the Legislature passed the Act of 1957 (T.C.A. sec. 6-3701 et seq.), providing "for the consolidation of all, or substantially all, of the governmental and corporate functions" vested in municipal corporations with such functions of counties in which such municipalities are located, and for merging them into a metropolitan government. Appellants mainly rely on this part of Section 2 of that Act (now 6-3702):

"6-3702. *Purpose and effect of chapter—Construction.*—

\* \* \* \* \* \*

"After consolidation of a county and a municipal corporation or corporations hereunder, no functions of the governing bodies of said county and said municipal corporation, or of the officers thereof, shall be retained and continued unless this chapter of [or] the charter of the metropolitan government shall expressly so provide, or unless such retention and continuation be required by the Constitution of Tennessee; and after said consolidation no officer or agency of said county

or of said municipal corporation shall retain any right, power, duty or obligation unless this chapter or the charter of the metropolitan government shall expressly so provide, or unless such retention and continuation be required by the Constitution of Tennessee.''

Appellants contend that the effect of this general provision is to abolish every local or county office not *expressly* retained and continued by this Act or by the charter and which is not required to be continued and retained by the Constitution; that the office of constable is a local or county office not required to be continued by the Constitution; and that it was not expressly retained and continued by this Act or by the charter, and was, therefore, abolished.

■ We think this contention cannot be sustained. No such broad effect, in our opinion, can be given this provision. When construed with the other parts of the Act, as must be done, it does not evidence a legislative intent to abolish or destroy all officers of the former consolidated governments not expressly retained.

As we have seen, the predominant intent of the Act is to provide for consolidation of ''all,'' or ''substantially all,'' of the governmental and corporate functions of county and city governments into one new metropolitan government; it does not necessarily require that all functions or officers of the prior governments be obliterated, but leaves a large discretion in these matters to the drafters of the Metropolitan Charter. T.C.A. secs. 6-3708, 6-3711(m), 3711(p).

And they exercised this discretion in the case before us. The charter did not abolish or destroy all the county

and city officers, but retained many of the officers and employees of both the city and county, as well as all the prior ordinances of the city and all the resolutions of the quarterly court, not inconsistent with the charter (secs. 1.06, 8.113, 8.116, 8.118, 12.12, 16.01-16.05, and 20.01). For example, such constitutional officers as sheriff, trustee, register, justice of the peace, as well as other county officers, were retained.

It is true that some of the functions of some of these officers were changed or transferred to other officers. For instance, some of the functions of the county court clerk and some of the functions of the tax assessor were changed or transferred to other officers. *Winter v. Allen,* supra. Some of the duties and functions of the county trustee were likewise changed (*Robinson v. Briley,* 213 Tenn. 418, 374 S.W.2d 382), and some of the duties of the sheriff were transferred to the chief of police; but none of these officers was abolished, and even the incumbents were continued in office. Also, other officers, not specifically mentioned in the 1957 Act or in the charter, were continued—for example, the complainant Commissioners of Election of Davidson County.

And still other officers provided for by the general laws of the state, but not expressly mentioned in the 1957 Act, or in the charter, were retained and continued by general language in the charter, such as that of section 1.06, which is as follows:

"The governmental and corporate authority of the Metropolitan Government shall be vested in a Metropolitan County Mayor, who shall be the chief executive officer; a Metropolitan County Council, which shall be the chief legislative body; an Urban Council, which

shall levy a property tax within the Urban Services District; the Judges of the Metropolitan Court; the Justices of the Peace; the departments, boards and commissions herein provided; *and such officers, agencies, boards and commissions as may be provided by the Constitution or general laws of the State of Tennessee,* or by ordinance enacted pursuant to this Charter'' (italics ours).

Thus, this provision vesting the authority of the Metropolitan Government in the mayor, council, judges, justices of the peace, the departments provided in the charter, and such ''officers * * * as may be provided by the Constitution or the general laws of the State,'' includes the office of constable, it being an office provided by the Constitution and the general laws of the State, and his duties being defined and his compensation fixed by such laws, with which this charter provision is to be read.

It is true that the charter (sec. 8.202) provides for the department of metropolitan police and makes them responsible ''for the preservation of public peace, prevention and detection of crime, apprehension of criminals, protection of personal and property rights, enforcement of the laws of the State'' and of the Metropolitan Government. But, of course, this does not mean that the police are to take over these duties of preserving the peace, protection of personal and property rights and enforcement of laws to the exclusion of the courts and other functionaries which are also charged with duties and responsibility in these matters.

The charter recognizes this and provides (sec. 16.05), among other things, that the sheriff, while charged with

his duties under the laws of the state, "shall not be the principal conservator of peace," "the function as principal conservator of peace" being vested in the police. But this does not exclude the sheriff's duties in this regard imposed upon him by the laws of the state. Likewise, the charter (sec. 8.202) provides:

"The Director and other members of the Metropolitan Police Force shall be vested with all the power and authority belonging to the office of constable by the common law and also with all the power, authority and duties which by statute may now or hereafter be provided for police and law enforcement officers of counties and cities."

This does not purport to abolish the office of constable, or that of sheriff, or any other state law enforcement officers. When read with the other provisions above referred to, we think it must be construed as vesting in the police all, i. e., as much as, or the same, authority as that vested by law in other law enforcement officers; and that such authority of the police is to be exercised with, and not to the exclusion of, that of state law enforcement officers.

The learned Chancellor put his decision upon the ground that a constable, though elected by the voters of a particular district, is essentially a state officer, and is no part of any governmental or corporate function of the county or the city, not an officer, agency or arm of county or municipal government. We agree with this conclusion. A constable performs no part of any function of county or city government, receives no salary from the county or city, and performs no duty for either. His duties are to the state and his compensation is fixed by the statute

upon the basis of the duties performed. Nor is the office supported by county or city taxation or any public funds.

In response to a question from a member of this Court during the argument of this case, learned counsel for appellants admitted that the abolishment of the office of constable is not necessary to the success of the new Metropolitan Government, and that continuance of the office will not defeat the government or in any way impede any of its operations.

For these reasons, appellants' assignment of error is overruled and the decree of the Chancellor is affirmed. The costs of the cause are adjudged against appellants.

On Petition to Rehear

Complainants have filed a petition to rehear. They do not ask the Court to reverse its decision. They insist it should ''clarify its opinion by eliminating any doubt that the office of constable may be abolished by the Legislature under the consolidation powers granted by Article 11, section 9 of the Constitution.''

The Legislature, however, has not undertaken to do that. As pointed out in our opinion, the Legislature, by the Consolidation Act of 1957 (T.C.A. sec. 6-3701 et seq.), did not abolish the office of constable or any other constitutional office; nor did it authorize the Charter Commission to do so.

Since the Legislature has not undertaken to do that, it would not be proper for us to decide *whether they could,* under this constitutional amendment (Art. 11, sec. 9), should they undertake to do so.

The Declaratory Judgments Act gives courts no power to determine future rights or controversies in

anticipation of events that have not occurred, or to give advisory opinions upon a theoretical or hypothetical state of facts. *Ball v. Cooter et al.,* 185 Tenn. 631, 634, 207 S.W.2d 340, 342; *Coleman v. Henry,* 184 Tenn. 550, 554, 201 S.W.2d 686; *Jared et al. v. Fitzgerald et al.,* 183 Tenn. 682, 688, 689, 195 S.W.2d 1, 4; *Newsum v. Interstate Realty Co.,* 152 Tenn. 302, 278 S.W. 56; *West v. Carr,* 212 Tenn. 376, 370 S.W.2d 469, 475.

It is the duty of this Court to pass on a constitutional question only when it is absolutely necessary for the determination of the case and of the rights of the parties to the litigation. *West v. Carr,* supra, and cases there cited.

For these reasons, the petition to rehear is denied at petitioners' cost.