Dennis Banks et al., Appellants,

*v,*

William L. Jenkins et al., Appellees.

449 S.W.2d 712.

(*Knoxville,* September Term, 1969.)

Opinion filed December 12, 1969.

On Petition for Rehearing February 16, 1970.

DAVID D. CREEKMORE, RICHARD L. HOLLOW, HAROLD WIMBERLY, Knoxville, for appellants.

DAVID M. PACK, Attorney General, EVERETT H. FALK, Assistant Attorney General, Nashville, for appellees.

MR. JUSTICE CRESON delivered the opinion of the Court.

This appeal comes from the Chancery Court of Knox County, Tennessee. The parties will be referred to herein as they appeared in the trial court; that is, Dennis Banks, et al., as complainants, and William L. Jenkins, et al., as defendants.

Complainants are all duly elected Constables in Knox County, Tennessee. Defendants are William L. Jenkins, Speaker of the House of Representatives; Frank Gorrell, Speaker of the Senate; Joe C. Carr, Secretary of State; Buford Ellington, Governor of the State of Tennessee; and George F. McCanless, Attorney General.

■ On May 6, 1969, complainants filed their original bill for declaratory judgment, pursuant to T.C.A. sec. 23-1101 et seq. That bill sought to have Chapter 160 of the Public Acts of 1969 declared unconstitutional. It is contended that this legislative enactment purports to strip the Constables of four counties of their powers to enforce the laws of the State of Tennessee.

The pertinent section of this Act is as follows:

"SECTION 8-1009. Common law power reserved in certain counties.

(a) Every constable, so elected and sworn, in those counties with a population of less than 235,000 in accordance with the 1960 Federal Decennial Census or any subsequent Federal Census, is a conservator of the peace and vested with all the powers and authorities belonging to the office of constable by common law.

(b) Every constable, so elected and sworn, in those counties with a population of 235,000 or more, in accordance with the 1960 Federal Decennial Census or any subsequent Federal Census, shall be vested only with the power and authority specifically set forth by statute."

It is then argued that the only power which has been reserved to the Constables in the four counties affected by the Act is the power to serve "civil" process. While

this statute does not speak in terms of "civil" process, but in terms of "all lawful" process, we will nonetheless proceed to discuss the various collateral contentions.

The cause was tried upon stipulation of facts on July 1, 1969. On July 8, 1969, the Chancellor entered a decree which held that Chapter 160 of the Public Acts of 1969 is a constitutional enactment.

Complainants prayed and ultimately perfected an appeal to this Court.

Ten assignments of error are filed, as follows:

"1. The Chancellor erred in holding that Chapter 160, Public Acts of 1969, removes less than a substantial and characteristic portion of the functions, duties and prerogatives incident to the constitutional office of Constable.

2. The Chancellor erred in holding that abolition of *all* of the common law powers of the office of Constable was less than substantial.

3. The Chancellor erred in failing to hold Chapter 160, Public Acts of 1969, unconstitutional for the reason that it abolishes the constitutional office of Constable by removing the substance of that office and a substantial portion of the duties, functions, and prerogatives of that office.

4. The Chancellor erred in holding that the office of Constable in Tennessee did not at the time of the enactment of Chapter 160, Public Acts of 1969, possess all of the duties and powers of that office as known at common law.

5. The Chancellor erred in failing to hold that the constitutional creation of the office of Constable implies no duties or powers.

6. The Chancellor erred in failing to distinguish and hold there was a difference between offices established by the constitution and those which owe their existence to the Legislature.

7. The Chancellor erred in failing to hold that the system of government established by the Constitution may be altered or abolished only in the manner prescribed by the Constitution.

8. The Chancellor erred in holding that certain cases involving Article XI, Section 9, Amendment 8 of the Constitution should govern all similar situations.

9. The Chancellor erred in holding that Article X, Section 2, Const. of 1796 (Article XI, Section 1, Const. of 1870) permits or allows repeal of any pre-existing statutes without regard to their nature.

10. The Chancellor erred in holding that the presumption in favor of the constitutionality of legislative enactments in and of itself upholds the Act in question.''

The office of constable is a constitutional one, established in Article VI, Section 15 of the Tennessee Constitution. There it is provided, ''There shall be two Justices of the Peace and one Constable elected in each district by the qualified voters therein * * *.''

The Constitution does not, however, expressly enumerate the duties and power of the office of constable. It is

complainants' theory that the State of Tennessee, in establishing the office of constable, continued the office as it existed under the common law; and that the common law duties of preservation of the peace became embodied in the Constitution, and cannot be abridged except by constitutional amendment.

Defendants maintain that the powers and duties of constable were first fixed by statute, and thus can be altered by legislative enactment.

The Chancellor below, after tracing the development of the office of constable, held that the duties of constable are those conferred by statute.

The common law of England was declared to be in force in the colony of North Carolina by the Acts of 1715.

The colony of North Carolina, in 1741, provided by statute "that each and every constable so appointed, nominated, and sworn is, and they are hereby invested with, and may execute the same power and authority to all intents and purposes, as the constables within the Kingdom of England are by law invested with, and execute."

This Court, in the early case of *Fields v. State* (1827) 8 Tenn. 168, in commenting upon this Act, stated: "It is from this statute that the constables derive all their powers, and by which they are put upon the footing of constables in England * * *." Thus, it appears that constables in North Carolina possessed all the powers of constables under the common law, but by legislative enactment.

The statutory powers of constable in North Carolina became the statutory powers of constables in Tennessee in 1796. Article 10, Sec. 2 of the Constitution of 1796 provided:

> "All laws and ordinances now in force and use in this territory, not inconsistent with this Constitution, shall continue to be in force and use in this state, until they shall expire, be altered or repealed by the Legislature."

The State of Tennessee, in 1796, embraced the statutory enactments of North Carolina. The Constitutional Convention did not, however, intend this adoption of North Carolina's statutes to be immutable. The continuity was conditioned, as indicated in the quotation above, for the intervening period, and until such time as the legislative branch of the government of Tennessee might be elected, installed and organized into a functioning body. We do not believe what is said above to be open to serious debate, nor to need such.

Complainants insist that since the office of constable was adopted without defining the duties thereof, a determination of the substance of that office requires a look to the common law duties of that office.

Regardless of whether the duties of constable in North Carolina originated by statute, the common law, or custom, the Constitutional Convention of 1796 only adopted them conditionally. In either case, the duties were subject to alteration or repeal by the Legislature unless embodied in the Constitution, without condition. It is clear that such is not the case.

Complainants assign as error the Chancellor's alleged holding that the office of constable in Tennessee did not

possess all of the duties and powers of that office as known at common law. This assignment is somewhat misdirected since the Chancellor had held that all the duties of constable were conferred by statute, and that none were constitutionally bestowed in any permanent sense. It is not disputed that constables were later legislatively vested with all the power belonging to that office at common law. Indeed, this is precisely the thrust of T.C.A. sec. 8-1009, which was passed in 1858. That statute is as follows:

"8-1009. *Common law power.*—Every constable so elected and sworn is a conservator of the peace, and vested with all the power and authority belonging to the office of constable by the common law."

It is idle to argue that "the Chancellor erred in failing to hold that the constitutional creation of the office of constable implies no duties or powers"; since the foregoing demonstrates that in Tennessee constables have never, at any time, been invested with implied powers.

Complainants next contend that an Act which purports to divest a constitutional office of a substantial portion of its powers and duties is unconstitutional, and that the Chancellor erred in holding (1) that the Act in question removes less than a substantial portion of the powers of constable, (2) that the abolition of all of the common law powers was less than substantial, and (3) that the Act was not unconstitutional by reason of the removal of the substance of the office of constable.

Complainants, in this regard, rely heavily upon the case of *State ex rel. Hays v. Cummins* (1897) 99 Tenn. 667, 42 S.W. 880.

That case involved a suit to test the constitutionality of the Workhouse Act of 1891, which purported to deprive the sheriff of custody of the County Jail. The Act was held unconstitutional on the ground that the Legislature had no power to deprive a constitutional officer of any substantial part of his authority which existed at the time the Constitution was adopted.

It should be noted that this Court has previously, in *Robinson v. Briley* (1963) 213 Tenn. 418, 374 S.W.2d 382, expressly confined the *Cummins* case solely to its particular facts.

In *Prescott v. Duncan* (1912) 126 Tenn. 106, 148 S.W. 229, the issue was whether or not certain traditional powers possessed by the Quarterly County Court could be constitutionally taken away by statute. Although the Quarterly Court is not specifically mentioned in the Constitution, it was nevertheless held to be an implied constitutional court. It was further held that while the Legislature could not abolish the Quarterly Court, it could deprive it of all powers not conferred upon it by the Constitution.

In *Hancock v. Davidson County* (1937) 171 Tenn. 420, 104 S.W.2d 824, a Private Act purported to remove all judicial functions from Justices of the Peace in Davidson County and to vest such functions in the General Sessions Court. This Court held that Act constitutional.

Concerning the constitutional powers of the office of Justice of the Peace, the Court, in *Hancock,* stated "his jurisdiction and powers are largely subject to the will of the Legislature."

This is significant in that Justices of the Peace and Constables were created simultaneously by the Constitution of Tennessee.

The case of *Glasgow v. Fox* (1964) 214 Tenn. 656, 383 S.W.2d 9 involved the question of whether or not the office of constable had been abolished in Davidson County by the formation of the Metropolitan Government.

The consolidation was effected pursuant to a Constitutional Amendment of Article 11, Section 9, in 1953, authorizing the Legislature to enact laws to provide for the consolidation of governmental function of municipal corporations with those of the county in which such municipality lies. Subsequently, the Legislature enacted T.C.A. sec. 6-3701 et seq., which authorized such consolidations. The consolidation of governmental functions, however, was somewhat limited. The language of these Sections clearly recognizes and expresses the intention that no constitutional office and no constitutional powers of an office is intended to be abolished.

In *Glasgow*, the Court held that constable is a constitutional office and cannot be abolished by the Legislature.

In its proper perspective, the *Glasgow* case stands for the proposition that the office of constable cannot be abolished, with which we agree. This is not to say, however, that some of the functions of the office, legislative in origin, may not be changed or transferred to other officers.

The case of *Metropolitan Government of Nashville and Davidson Co. v. Poe* (1964) 215 Tenn. 53, 383 S.W.2d 265 was a suit brought by the Sheriff of Davidson County challenging the divestment of his peace-keeping functions and transferring them to the Metropolitan Chief of

Police. The Court saw no constitutional interdiction to removal of the duty of preservation of peace from the Sheriff. The Court in *Poe* stated:

"The duties of the Sheriff of Davidson County in regard to criminal law enforcement have been taken from him by the Charter adopted pursuant to a *general* law which, in turn, was specifically authorized by a constitutional amendment. The Charter bears the approval of the people in a plebiscite conducted for that purpose in the area covered by the Metropolitan Government."

Contrary to the case of *State ex rel Hays v. Cummins,* supra, the Court in *Poe* did not stress what functions of Sheriff were taken away, but rather what functions were retained. Thus, even though preservation of peace was a substantial portion of the duties of sheriff, to deprive him of that function was not considered to be an effective abolition of the office.

It is contended by complainants that the cases involving issues raised by the consolidation of Davidson County and the City of Nashville should not govern this case. In these situations it is argued that a constitutional amendment was adopted enabling the establishment of metropolitan governments, and that the plain intent of the Metropolitan Charter was to provide for consolidation of functions of various offices.

██ It is our view that the situation above does not present a change in the basic rule that a constitutional office may not be abolished by legislative enactment; neither do our prior cases treat it as such.

██ The fact that a particular governmental unit chooses to consolidate the functions of certain offices

does not confer upon it power to abolish constitutional offices. As has been noted earlier, the basic variance between the parties in this cause is what constitutes an abolition. Certainly the depriving of constables of certain statutory powers does not constitute such, when substantive powers are retained.

Complainants next insist that the Chancellor erred in failing to distinguish between offices established by the Constitution and those which owe their existence to the Legislature.

It is alleged that there is a distinction between the instant case and that of *Prescott v. Duncan,* supra. In *Prescott v. Duncan,* the Court held constitutional an Act which abridged certain duties of the Quarterly County Court, which consisted mainly of justices of the peace. Complainants place particular emphasis upon the fact that the Quarterly County Court is not mentioned in the Constitution, but is found there only by implication; that the Quarterly Court and justices had few common law functions. They contend that, this being true, the Legislature may prescribe their duties.

We consider this distinction to be without merit.

Complainants further insist that the Chancellor erred in failing to hold that the system of government established by the Constitution may be altered or abolished only in the manner prescribed by the Constitution. We consider this assignment to be in the same category as that just mentioned. Clearly, the Act complained of does not alter or abolish our system of government. The office of constable is still in existence, and still retains certain of its substantive functions.

It is finally insisted that the Chancellor erred in holding that the presumption in favor of the constitutionality of legislative enactments in and of itself upholds the Act in question.

It is obvious that the Chancellor did not hold this legislation valid for this reason alone, but, in fact, rendered a well-reasoned opinion citing several cogent reasons for his decision.

It results that the decision of the court below is affirmed, with costs of the cause assessed against complainants.

DYER, CHIEF JUSTICE, and JENKINS and BOZEMAN, SPECIAL JUSTICES, concur.

McCANLESS, JUSTICE, not participating.

OPINION ON PETITION TO REHEAR

MR. JUSTICE CRESON.

Complainants-appellants have filed a petition to rehear in which they seek "clarification" of our original opinion.

The essence of this petition is a request that this Court decide questions not actually made, perhaps not even in existence. This the Court will not do; neither does it indulge in advisory opinions.

The only question properly raised in the case as presented was, and is, whether or not the office of Constable had been unconstitutionally abolished. We held that it had not.

The petition is denied.

DYER, CHIEF JUSTICE, and JENKINS and BOZEMAN, SPECIAL JUSTICES, concur.

McCANLESS, JUSTICE, not participating.