IN THE COURT OF APPEALS OF TENNESSEE **FILED**

AT KNOXVILLE

**March 31, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE, ex rel.          ) C/A NO. E1999-01603-COA-R3-CV
JERRY N. ESTES,                       )
                                      ) BRADLEY CHANCERY
          Plaintiff-Appellant,        )
                                      ) HON. JERRI S. BRYANT,
vs.                                   ) CHANCELLOR
                                      )
JOHNNY DEWAYNE HICKS,                 ) VACATED
                                      ) AND
          Defendant-Appellee.         ) REMANDED


PAUL G. SUMMERS, Attorney General and Reporter, MICHAEL E. MOORE, Solicitor General, and MICHAEL A. MEYER, Assistant Attorney General, Nashville, for Plaintiff-Appellant.


MICHAEL M. RAULSTON, Chattanooga, for Defendant-Appellee.


**O P I N I O N**


Franks, J.

In this action, the State sought to remove defendant from the office of constable in Bradley County, on the grounds that he did not meet the statutory qualifications to hold the office of constable. Tenn. Code Ann. §8-10-102, states:

>    (a)(1) Except as provided in subdivision (a)(2), to qualify for election or appointment to the office of constable, a person shall:
>
>    (A)    Be at least twenty-one (21) years of age;
>    (B)    Be a qualified voter of the district;
>    (C)    Be able to read and write;
>    (D)    Not have been convicted in any federal or state court of a felony;  and
>    (E)(i)  Not have been separated or discharged from the armed forces of the United States with other than an honorable discharge.

At trial, the State focused on the provision that a constable must "be able to read and write", and after the State presented its proof, defendant moved to dismiss pursuant to T.R.C.P. Rule 41, and the Trial Judge dismissed the action.  She observed in her Memorandum Opinion, "In this case, the State has the near impossible burden of proving the defendant does not meet the requirements of the statute, which contains no definition and on a topic upon which opinions differ greatly."

The legislature did not define what it means to be able to read and write pertaining to that requirement set forth in Tenn. Code Ann.§8-10-102(a)(1)(c).  The defendant argues that the qualification simply means that to read and write at any level whatsoever.  The State contends, however, that it means that a constable should be able to read and write at such a level so as to be able to discharge the duties of office.

Since the statute is subject to different interpretations, it is ambiguous. *In re Conservatorship of Clayton*, 914 S.W.2d 84 (Tenn. Ct. App. 1995).  If a statute is ambiguous, it is proper to invoke the principles of statutory construction.  *Id.*  The Court may consider the existing law, the legislative history behind the enactment of the statute, and the evil sought to be addressed.  *Id.*  Moreover, the construction of a statute is a question of law which appellate courts review *de novo*, with no presumption of correctness.  *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920 (Tenn.1998).

The office of constable originated as part of the common law.  *Glasgow*

2

*v. Fox*, 383 S.W.2d 9 (Tenn. 1964). It was also provided in Article 6, Section 15 of the Constitution of the State of Tennessee, which provision was repealed by amendment in 1978. As defendant contends, statutes in derogation of common law should be strictly construed, but "[t]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Worley v. Weigel's, Inc.*, 919 S.W.2d 589 (Tenn. 1996).

Tenn. Code Ann. §8-10-101 *et seq.* deals exclusively with the office of constable, and contains the section in question which sets the qualifications for the office. The section has been aptly described as a "crazy quilt of differing provisions", because it deals not only with how constables are to be elected and the qualifications therefor, but also with permissive uniform and patrol car standards, surety bonds, and other issues, and then exempts several counties from its application based upon population. *See* Tenn. Code Ann. §8-10-101 *et seq.*; *Long v. Blount County Election Com'n*, 854 S.W.2d 894 (Tenn. Ct. App. 1993).

Previous to the 1997 amendment adding the current requirements, the statute merely stated that no person under the age of eighteen was eligible to be constable. During the debate over the amendment, Senator Haun, the sponsor, stated that the intent was to set minimum requirements for holding office. There was some discussion regarding the general lack of confidence in and respect for constables in certain counties, and the legislators talked about the need to make the office more reputable in any way possible.

Questions involving statutory construction should be resolved "in light of reason, having in mind the object of the statute, and the mischief it aims at." *Loftin v. Langsdon*, 813 S.W.2d 475, 479 (Tenn. Ct. App. 1991). Any words in the statute which are indefinite or unclear should be interpreted in such a way as to "express the legislature's intention and purpose." *Id.*

"The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end." *Locust v. State*, 912 S.W.2d 716, 718 (Tenn. Ct. App. 1995). "Furthermore, we are to assume that the legislature used each word in the statute purposely, and that the use of these words conveys some intent and has a meaning and purpose." *Id.* at 718. "Effect must be given to every word, phrase, clause and sentence of the act in order to achieve the legislative intent and the statute should be construed so that no section will destroy

another." *Dingman v. Harvell*, 814 S.W.2d 362 (Tenn. Ct. App. 1991).

Constables serve civil process, which includes properly filling out the return of service whether it be a summons or civil warrant. *See* Tenn. Code Ann. §8-10-111. Service of process can include orders of protection in domestic situations, which requires that the order be read to the defendant in order to be properly served. *See* Tenn. Code Ann. §36-3-604 and §36-3-605. Moreover, the laws in complexity have grown over the years. Accordingly, we conclude that the legislature intended a qualified individual to hold the office of constable must be one who could read and write well enough to perform the duties of that office, which would mean that the individual would have to be able to read and write well enough to properly read the documents he is required to serve, and write well enough to fill out returns of service.

The Trial Court treated defendant's motion as a motion to dismiss, since this was a non-jury case. *See City of Columbia v. C.F.W. Construction Co.*, 557 S.W.2d 734 (Tenn. 1977). Where a motion to dismiss is made, the trial court must "impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits". *Id.*

The Trial Court found that the State had not met its burden in showing that Hicks could not read and write, however, the court interpreted the requirement as being able to read and write at any level. The evidence shows Hicks demonstrated an ability to read and write at some level, but did not demonstrate that he possessed the ability to read and write at a sufficient level to properly read process or warrants that in the discharge of his duties he would be required to serve, or to fill out the return of service on those documents. The evidence generally established that Hicks could read at the third grade level range, but had an accuracy of reading skills of 54% at the sixth grade level. There was also evidence that he admitted to an investigator in the District Attorney General's Office that he could not read, i.e., documents he was required to serve as constable, or write at the level to properly discharge his duties in making returns, etc.

Accordingly, we vacate the Trial Court's Order of Dismissal, and remand to allow the parties to present all of their evidence and the Trial Court will then make a determination of the issues before the Court.

4

The cause is remanded to the Trial Court for further proceedings consistent with this Opinion, with the cost of the appeal assessed to the defendant.

_____
Herschel P. Franks, J.

CONCUR:

_____
Charles D. Susano, Jr., J.

_____
D. Michael Swiney, J.