**STATE of Tennessee ex rel. Bee DeSELM, et al.**

v.

**John W. OWINGS, et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 14, 2009 Session.

May 27, 2009.

Permission to Appeal Denied by Supreme Court March 1, 2010.

Petition to Rehear Denied March 22, 2010.

Herbert S. Moncier, Knoxville, Tennessee, for the appellants, Bee DeSelm, Alfred Akerman, Margo Akerman, Donna J.G. Brian, Mike Whalen, Jerry Bone, James Gray, Robert Cunningham, Millie Cunningham and Carl Seider.

Robert H. Watson, Jr., Knoxville, Tennessee, for the appellees, John E. Owings and Knox County, Tennessee.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. McCLARTY, J., joined.

The plaintiffs, ten citizens of Knox County, filed suit against John W. Owings, the Knox County Law Director, and Knox County, seeking, among other things, declaratory judgment and a writ of mandamus, pertaining to the plaintiffs' request that the officers of Knox County who were newly-elected in the August 7, 2008, general election, be sworn in immediately following the certification of the election results by the Knox County Election Commission, rather than waiting until September 1. The defendants filed a motion to dismiss, which the trial court granted, based, in part, on a lack of standing. The plaintiffs appeal. We affirm.[1]

I.

The style of the complaint[2] identifies and describes the plaintiffs in the following manner:

State of Tennessee on relationship of Bee DeSelm, Alfred Akerman, Margo Akerman, Donna J.G. Brian, Mike Whalen, Jerry Bone, James Gray, Robert Cunningham, Millie Cunningham and Carl Seider and said named Citizens as an Association exercising their Tenn. Const. Art. 1, §§ 1, 8 and 17 rights; as an [sic] *Bennett v. Stutts* Association of Public Spirited Citizens; as an Association of Local Taxpayers; as an Association of T.C.A. § 29–35–110 Citizens; as T.C.A. § 8–47–110 Citizens; and as Politically Associated Persons.

The original complaint—which was filed on August 4, 2008—seeks "judicial review" of a "controversy." The core facts of that controversy are found in the first two paragraphs of the complaint:

Plaintiffs seek judicial review by expedited declaratory judgment to settle a controversy created by Knox County Law Director John E. [sic] Owings' reported directives that persons elected to fill vacated Knox County offices at the August 7, 2008 Knox County Election can delay taking their oath of office until September 1, 2008.

Plaintiffs assert that persons elected to fill an unexpired term of an office, including Law Director, take office immediately upon the Election Commission certifying the winners of the election and are required to perform the ministerial duty to take the oath of office.

(Paragraph numbering in original omitted.)

As noted, the plaintiffs, among other things, ask that the officers elected on August 7, 2008, "be sworn and take office immediately after the Knox County Election Commission certifie[s] the winners of each office."[3] Plaintiffs alleged in their original complaint that the defendant Owings is not acting in a proper and legal way with respect to these matters. They seek a writ of mandamus "to require that [Owings] perform his duty as Knox County Law Director to direct Knox County[,] Tennessee to conduct a swearing in for all officials elected on August 7, 2008[,] to fill vacated offices, including Law Director,

---

1. At oral argument, the plaintiffs orally moved the Court to disqualify attorney Robert H. Watson, Jr., from representing both Mr. Owings and Knox County because of the plaintiffs' perception that there was an irreconcilable conflict of interest between the defendants. We took the motion under advisement. Upon consideration of the motion, it is denied.

2. This is actually the style as shown on the plaintiffs' brief in this Court. We have quoted this style because it apparently incorporates the style of this case as it existed when the trial court entered its last judgment on September 22, 2008.

3. The complaint reflects that the newly-elected county officers were elected to the following offices: commissioner (eight in number), sheriff, trustee, register of deeds and clerk.

immediately after the Knox County Election Commission certifies the winners of the August 7, 2008[,] election." (Footnote in plaintiffs' complaint omitted.) Further, in addition to mandamus, the plaintiffs seek declaratory judgment, "damages, attorney fees and costs," and general relief.

In addition to the identifying and descriptive material in the style, the plaintiffs refer to themselves "as members of a partnership of publicly spirited citizens known as 'The Citizen Plaintiffs.'" They allege that their "partnership" has some 13 objectives in pursuit of the partnership's "purpose." All of these objectives can be properly characterized as addressing alleged misdeeds or threatened wrongs by the government of Knox County and its officers. The plaintiffs purport to act for themselves and "voters, taxpayers, candidates, [and] civic[-] minded citizens." Later in their original complaint, in an attempt to bolster their "standing" allegations, the plaintiffs point to their "prior participation in litigation individually, collectively and in groups to accomplish the purposes of [their] partnership" and refer specifically to 18 lawsuits against various and sundry defendants, including Knox County and county officers. They allege that these lawsuits reflect their "special interest, not shared by the general public of Knox County."

On August 8, 2008, the plaintiffs filed a motion to amend and supplement their complaint. On the same day, the defendants filed a motion to dismiss, which, among other things, asserts that the "[p]laintiffs do not have standing to bring this suit, as they do not have the appropriate nexus with the offices."

The trial court heard all pending motions including the defendants' motion to dismiss on August 13, 2008. Following

that hearing, the court entered its judgment on August 25, 2008, dismissing the plaintiffs' suit. Among other reasons given, the court held that "[t]he plaintiffs do not have standing to bring this cause of action." On the day the judgment was entered, the plaintiffs filed their "Second Motion to Amend and Supplement Complaint."

On August 26, 2008—obviously after the trial court had stated on August 13, 2008, that it was dismissing the plaintiffs' lawsuit—the plaintiffs filed their "*Fourth* Motion to Amend and Supplement Complaint." (Emphasis added.) On September 11, 2008, the plaintiffs filed a pleading, which, as pertinent here, changed the designation of the aforesaid "*Fourth* Motion" to "*Third* Motion," (emphasis added), but that same document also includes a true "Fourth Motion to Amend and Supplement Complaint." In any event, the trial court, by order entered September 22, 2008, denied all of the plaintiffs' pending motions.[4]

This appeal followed.

## II.

The plaintiffs raise a number of issues. However, the threshold question for us is whether the plaintiffs have standing to pursue the claims in their complaint. The short answer to that question is "no."

## III.

■ The trial court granted the defendants' Tenn. R. Civ. P. 12.02(6) motion for "failure to state a claim upon which relief can be granted." *Id.* Such a motion challenges the legal sufficiency of the well-pled factual allegations of the complaint. *Trau–Med of America, Inc. v. Allstate Ins.*

---

**4.** None of the amended complaints add significantly to the allegations in the original complaint bearing on the issue of the plaintiffs' alleged standing.

*Co.,* 71 S.W.3d 691, 696 (Tenn.2002). We review a trial court's grant of a Rule 12.02(6) motion *de novo* "without giving any presumption of correctness to [the trial court's] legal conclusions." *Id.* at 696–97.

## IV.

▮ As previously noted, the trial court held that the plaintiffs lack standing to pursue the claims asserted in their complaint. The Supreme Court extensively discussed the concept of "standing" in the case of *American Civil Liberties Union v. Darnell,* 195 S.W.3d 612 (Tenn.2006):

> Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues. Grounded upon "concern about the proper—and properly limited—role of the courts in a democratic society," the doctrine of standing precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed." The doctrine of standing restricts "[t]he exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, ... to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."

> To establish standing, a plaintiff must show three "indispensable" elements "by the same degree of evidence" as other matters on which the plaintiff bears the burden of proof. First, a plaintiff must show a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient. Standing also may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens. Were such injuries sufficient to confer standing, the State would be required to defend against "a profusion of lawsuits" from taxpayers, and a purpose of the standing doctrine would be frustrated.

> The second essential element of standing is a causal connection between the claimed injury and the challenged conduct. A plaintiff may satisfy this element by establishing the existence of a "fairly traceable" connection between the alleged injury in fact and the defendant's challenged conduct. The third and final element necessary to establish standing is a showing that the alleged injury is capable of being redressed by a favorable decision of the court.

> It is important to note that standing does not depend upon a plaintiff's likelihood of success on the merits; however, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.

*Id.* at 619–20 (citations with explanatory information in parenthesis and footnote omitted).

## V.

Both sides rely upon the Supreme Court case of *Bennett v. Stutts,* 521 S.W.2d 575 (Tenn.1975). The plaintiffs argue that *Bennett* supports their position. The defendants contend that this landmark case bolsters their position, and the trial court's conclusion, that the plaintiffs lack standing. We have determined that the correct

answer to the "standing" question is to be found in *Bennett.*

## VI.

As in the instant case, the suit in *Bennett* was brought by "citizens, residents and taxpayers." *Id.* at 576. As an aside, we note, and find interesting, that the Court in *Bennett* said that the complaint there was dealing with a *"patent* public wrong." *Id.* (Emphasis added.) This statement was made without any equivocation on the part of the High Court. The complaint in *Bennett* sought to invalidate the election of an individual to the position of County Superintendent of Public Instruction because "the election ... was conducted by secret ballot in violation of the entirely mandatory provisions of" the applicable statute. *Id.* Again, no equivocation by the High Court on the issue of a statutory violation. The complaint sought to prevent the new superintendent "from taking office or performing any of the duties of office." *Id.* On appeal, the Supreme Court held, in affirming the trial court, that "[t]he suit ... must fail for plaintiff's lack of standing to sue." *Id.*

Early on in the opinion, the Supreme Court stated the "settled law":

> It is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally.

*Id.* (citations omitted). The plaintiffs in the instant case acknowledge that this is a well-established general principle. However, they strenuously argue that *Bennett,* later in that opinion, carves out an exception to this general rule. They rely upon the following language in *Bennett:*

> We recognize that the requirement that suits in the nature of a *quo warranto*

and those seeking to redress public wrongs be brought by the District Attorney General can create insurmountable problems. Public spirited citizens should not be stifled or stopped in their search for solution to public wrongs and official misconduct such as are involved in this case.

If the District Attorney General, in matters such as this, should act arbitrarily or capriciously or should be guilty of palpable abuse of his discretion in declining to bring such an action, or in authorizing its institution, the courts will take jurisdiction upon the relation of a private citizen, in the name of the State of Tennessee.

When citizens sue to rectify a public wrong, under these circumstances, a copy of the complaint shall be served upon the District Attorney General. It shall be the duty of the trial court forthwith to conduct an in limine hearing designed to determine whether to permit plaintiffs to proceed. If it be determined that the District Attorney General's refusal to bring the action, or to authorize the use of his name in its institution, was improper or unjustified, or that plaintiff's case is prima facie meritorious, the trial court shall permit the action to proceed.

*Id.* at 577 (citations omitted). The plaintiffs now before us point out that they served a copy of their complaint on Randall Nichols, the District Attorney General for Knox County. They complain that the trial court failed to hold a hearing to determine whether Attorney General Nichols wrongfully refused and failed to proceed with this action. They contend that *Bennett* stands for the proposition that, if an attorney general, after being notified of a suit, refuses to bring the action or refuses to authorize the use of his or her name and if his or her refusal "was

improper or unjustified," plaintiffs such as those in this case will be permitted to proceed, *regardless of whether the plaintiffs have standing under the general principle reiterated in Bennett and quoted by us in this opinion.* We disagree with the plaintiffs' interpretation.

*Bennett's* reference to the district attorney general is simply a recognition of the unique role of the attorney general in suits of this nature. *Id.* However, despite this unique role, *Bennett* makes clear that the attorney general cannot "act arbitrarily or capriciously" or "be guilty of palpable abuse of his discretion in declining to" pursue or allow such a suit to be pursued in the attorney general's name. *Id. Bennett* does *not* expressly say that the failure to act of a recalcitrant attorney general will, *ipso facto,* convert a plaintiff, *without standing in the traditional sense,* into a plaintiff with standing. In the absence of such an express holding by the High Court, we conclude that the failure of an attorney general to act or allow his or her name to be used, simply means that the attorney general's preeminent role in this area will give way to a *plaintiff with standing.*

We find no error in the trial court's failure to conduct a hearing on the "attorney general" issue discussed in *Bennett.* We say this because a ruling that General Nichols was improperly refusing to act or permit others to act in his name would not benefit these plaintiffs. The record clearly reflects that the plaintiffs do not "aver special interest or a special injury not common to the public generally." *Id.* at 576. We do not doubt that these plaintiffs are "public spirited citizens," active in the political and public affairs of the community, "politically associated persons," and that they have participated in the filing of many lawsuits in an effort to remedy and correct what they perceive to be wrongful and

illegal conduct by public officials. None of this, however, vests them with standing. In the absence of standing, they cannot proceed with this action.

## VII.

■ The plaintiffs attempt to demonstrate standing by arguing that they can proceed as taxpayers. On this issue, the trial court opined as follows:

> The parties have failed to allege sufficient facts to invoke their status as a taxpayer, and in particular there's been no specific allegations of an illegal expenditure or an increase of a tax burden on them or any other member of the tax paying public at large.

We agree. *See Parks v. Alexander,* 608 S.W.2d 881, 886 (Tenn.Ct.App.1980); *see also Ragsdale v. The City of Memphis,* 70 S.W.3d 56, 62–63 (Tenn.Ct.App.2001).

## VIII.

■ Having found a lack of standing we decline to address the merits or demerits of the substance of the plaintiffs' complaint or the defendants' position that the issues in this case were rendered moot by virtue of the fact that the new county officers were duly sworn into office on September 1, 2008, bringing to an end the tenure of their predecessors. It is not the prerogative of an appellate court to render advisory opinions. *Banks v. Jenkins,* 224 Tenn. 23, 449 S.W.2d 712, 717 (1969).

## IX.

The judgment of the trial court is in all things affirmed. Costs on appeal are taxed to the appellants, Bee DeSelm, Alfred Akerman, Margo Akerman, Donna J.G. Brian, Mike Whalen, Jerry Bone, James Gray, Robert Cunningham, Millie Cunningham and Carl Seider. This case is remanded to the trial court, pursuant to

applicable law, for the collection of costs assessed below.