FOR PUBLICATION

# IN THE SPECIAL SUPREME COURT OF TENNESSEE

## AT NASHVILLE

| | | |
|---|---|---|
| ROBERT L. DeLANEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | Davidson Chancery |
| | ) | |
| v. | ) | Hon. Ellen Hobbs Lyle, |
| | ) | Chancellor |
| | ) | |
| | ) | S. Ct. No. 01S01-9808-CH-00144 |
| BROOK THOMPSON, ET AL., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

For Plaintiff-Appellant:

Robert L. DeLaney
Nashville

For Defendants-Appellees:

John Knox Walkup
    Attorney General and
    Reporter
    Nashville

Michael E. Moore
Solicitor General
Nashville

Michael W. Catalano
Associate Solicitor General
Nashville

# O P I N I O N

Judgment of Court of
Appeals and Trial Court
Reversed; Case Remanded.

Davis, C.J.,

In this case, we are invited to decide whether the Tennessee Plan for election of appellate judges, codified as Title 17, Chapter 4 of the Tennessee Code Annotated, is unconstitutional for a variety of reasons, but most particularly because it contemplates "retention elections" for incumbent appellate judges.  In general, the Tennessee Plan provides that an incumbent appellate judge may run for reelection unopposed on the ballot, provided the incumbent's retention has been recommended by the judicial evaluation commission; the judge will be retained in office if a majority of those voting in the election for that judge's seat vote for such retention.  Tenn. Code Ann. § 17-4-115(d)(1)(1994).  It is the duty of all courts, including the Supreme Court, to pass on a constitutional question only when it is absolutely necessary for the determination of the case and of the rights of parties to the litigation.  Glasgow v. Fox, 214 Tenn. 656, 666-667, 383 S.W. 2d 9, 13-14 (1964).  See also, Jackson v. Davis, 530 F. Supp. 2, 4 n. 1 (E.D. Tenn.), aff'd, 667 F. 2d 1026 (6th Cir. 1981).  We hold that it is not necessary to address the constitutionality of the Tennessee Plan in this case, because it is not applicable to the facts of this case. For that reason, the Court of Appeals erred in holding the Tennessee Plan constitutional, just as the trial judge erred in holding the Plan unconstitutional.  We reach this conclusion because the express provisions of the Tennessee Plan render it inapplicable to the election for which defendant Brook Thompson, State Coordinator of Elections, refused to accept a qualifying petition submitted by the plaintiff, Robert L. DeLaney.

Judge Henry Todd's eight year term on the Tennessee Court of Appeals was to expire September 1, 1998.  Judge Todd was required to be evaluated by the Judicial Evaluation Commission pursuant to Tenn. Code Ann. § 17-4-201(d)(Supp. 1998) and Rule 27 of the Supreme Court Rules.  Judge Todd apparently had no intention of running for

reelection, and so advised the Judicial Evaluation Commission.

On March 26, 1998, before the Commission had issued any report concerning retention of the incumbent judges, the plaintiff requested from Thompson a nominating petition to run as an independent candidate for the Tennessee Court of Appeals. By letter dated March 27, 1998, Thompson advised the plaintiff as follows:

> [I]f the Commission does not recommend one or more of the judges for retention, then that position or positions will be considered contested offices and this office will issue petitions to any interested persons.

This statement by Thompson in his March 27, 1998 letter to the plaintiff was entirely consistent with the provisions of Tenn. Code Ann. § 17-4-115 (c), which provides as follows:

> *Unless* the judicial evaluation commission *recommends* the retention of a judge, **the provisions of this part shall not be applicable**. A political party may nominate a candidate and independent candidates may qualify under the general election law for the general election which shall be the regular August election. *After a judge is elected under this subsection* the provisions of this chapter concerning the evaluation and retention process shall again apply.

(Emphasis supplied).[1] The entire Tennessee Plan pertaining to the election of appellate judges appears in Part 1 ("Judicial Selection") of Chapter 4 of Title 17 of the Code. Therefore, under Tenn. Code Ann. § 17-4-115(c), the failure of the Commission to recommend the retention of any judge would render the Tennessee Plan inapplicable to the election to fill that judge's seat, and the election therefore would be conducted as any other election (rather than as a "retention election). Under the express direction of Tenn. Code Ann. § 17-4-115(c), in this situation, political parties can nominate candidates and independent candidates can qualify , and only after the election will the Tennessee Plan again apply. Accordingly, any interested person would be entitled to receive a qualifying petition and to seek to qualify to have his or her name placed on the ballot in the election for that judge's seat.[2]

---

[1] "Part", as that term is used in the Tennessee Code, is a term of art, and here means Part 1 of Title 17, Chapter 4—the entire portion of the Tennessee Plan having to do with "Judicial Selection." See 4 Tenn. Code Ann. at xiii (1994)(numbering system appearing in the User's Guide to the Code).

[2] The dissent reasons that Tenn. Code Ann. § 17-4-115(c)(1994) only applies "to incumbent judges seek[ing] reelection," and that since Judge Todd did not seek reelection, the section did not apply and Judge Todd's seat was to be filled pursuant to another provision of the Tennessee Plan, Tenn. Code Ann. § 17-4-116(1994). The difficulty with this reasoning is that the recommendation for retention must occur before the qualifying deadline, and Tenn. Code Ann. §17-4-115(c) stipulates that if a judge does not receive such a recommendation, only "[a]fter a judge is elected under this subsection [Tenn. Code Ann. § 17-4-115(c), shall] the provisions of this chapter concerning the evaluation and

Rather than waiting to see whether the Commission would fail to recommend retention of any judge, on April 3, 1998, the plaintiff filed this action in Davidson County Chancery Court to seek to enjoin Thompson from placing the names of several incumbent judges on the ballot on a retention election basis. The plaintiff did not ask the Court to compel the defendant to issue him a qualifying petition, or to extend the qualifying deadline.

On April 10, 1998, the Judicial Evaluation Commission issued the "Tennessee Appellate Judges Evaluation Report". This Report did not recommend the retention of Judge Todd, but stated that the Commission was informed that Judge Todd would not seek reelection. Interestingly enough, the Office of the Attorney General had previously advised the Judicial Evaluation Commission that it could not fail to evaluate an incumbent judge in just this situation. In Opinion No. 97-101 (July 17, 1997), the Office of the Attorney General stated as follows:

> The Judicial Evaluation Commission is not relieved of its obligation to evaluate the judge regardless of any expression of such intention [not to seek reelection], because the Commission has not been given any legal authority to utilize such a statement to remove a judge from the evaluation process.

Based on the position taken in Thompson's March 27 letter to the plaintiff; based on the Attorney General Opinion to the effect that the Commission was under an obligation to evaluate Judge Todd regardless of his intention to run for office; and based upon the above-quoted language of Tenn. Code Ann. § 17-4-115 (c) that "*unless the judicial evaluation commission recommends the retention of a judge, the provisions of* [the Tennessee Plan] *shall not be applicable",* one might have expected the plaintiff to renew his request for a qualifying petition, or Thompson to promptly issue the petition without any additional request. However, the plaintiff apparently did not again demand a qualifying petition from Thompson until May 12, 1998, more than a month after the Commission issued its Report. While Thompson did on May 13 provide the plaintiff with the requested

retention process...again apply." Unless this language does not mean what it says, Tenn. Code Ann. § 17-4-116, which comprises a part of the Tennessee Plan, cannot apply to fill the seat of an incumbent whose retention has not been recommended, regardless of whether or not the incumbent eventually chooses to run for reelection. Moreover, under the dissent's reading of the statute, even after the judicial evaluation commission failed to approve an incumbent's retention, political parties and potential candidates would not know whether the Tennessee Plan was to apply to the election until the qualifying deadline passed without the incumbent filing a declaration of candidacy. Thus, any rights conferred by Tenn. Code Ann. § 17-4-115(c) upon political parties to nominate candidates and upon independent candidates to qualify to run in the election, would be effectively frustrated.

qualifying petition, Thompson at that time modified the position he had taken in his March 27 letter to plaintiff. In a notice to plaintiff, he stated as follows:

> *If Judge Henry Todd does not file a declaration of candidacy* for the office of Judge of the Court of Appeals, Middle Section, pursuant to Tennessee Code Annotated § 17-4-115(a)(1), by the qualifying deadline of May 21, 1998, then any qualifying petitions for candidacy for the office of Judge of the Court of Appeals, Middle Section, presently held by Judge Todd that are lodged with this office will not be filed and are void and of no legal effect. *In that situation, Tennessee Code Annotated § 17-4-116(a)* [that is, the Tennessee Plan] *will control the filling of the vacancy.*

(Emphasis supplied.) The plaintiff did lodge his qualifying petition on May 19, 1998, but Judge Todd did not file a Declaration of Candidacy by the qualifying deadline of May 21. Thompson then informed the plaintiff that his qualifying petition was void and of no legal effect, because the election was to be governed by the Tennessee Plan, specifically Tenn. Code Ann. § 17-4-116 (1994). This, in effect, meant that no election would be held for Judge Todd's seat until after the Governor had appointed a new judge, something which was unlikely to happen, and did not in fact happen, before August 6, 1998, the election day specified by Article VII, § 5 of the Tennessee Constitution.

As far as we are able to determine from the record before us, the plaintiff never challenged Thompson's position that Tenn. Code Ann. § 17-4-116 would apply to the election for Judge Todd's seat. Instead, the plaintiff chose to rest his position in the trial court entirely upon the asserted unconstitutionality of the Tennessee Plan. The trial court agreed with the plaintiff that the Tennessee Plan was unconstitutional and enjoined Thompson to place the plaintiff's name on the ballot for the August 6, 1998 election to fill Judge Todd's seat. The defendants appealed, and persuaded the Special Court of Appeals appointed to hear this case, to dissolve the injunction. The Special Court of Appeals then reversed the trial court, and pronounced the Tennessee Plan constitutional. We granted the plaintiff's application to appeal, and we now reverse the decision of the Court of Appeals because the Tennessee Plan was not applicable to the election to fill Judge Todd's seat.

While Thompson recognized in his March 27 letter to the plaintiff that the Commission's failure to recommend Judge Todd's retention would render the Tennessee Plan inapplicable to the election for his seat under Tenn. Code Ann. § 17-4-115(c), he

apparently considered Judge Todd's *subsequent* failure to file a Declaration of Candidacy as changing the situation and triggering the procedure described in Tenn. Code Ann. § 17-4-116.[3] Thompson was simply incorrect. Section 17-4-116, a part of the Tennessee Plan, must be read in the light of the preceding section, and most especially Tenn. Code Ann. § 17-4-115 (c), which expressly declares that the Tennessee Plan is not applicable if the Judicial Evaluation Commission does not recommend that an incumbent judge be retained, and will not again be applicable until after the election specified in that subsection. If Tenn. Code Ann. § 17-4-116 was applicable when the Commission has not recommended such retention, then Tenn. Code Ann. § 17-4-115 (c) would be meaningless. We are bound by established principles of statutory construction to construe statutes, whenever possible, in a way which gives meaning to every portion of the statute. Anderson Fish & Oyster Co. v. Olds, 197 Tenn. 604, 277 S.W. 2d 344 (1954). Therefore, we must reject an interpretation which would render the provisions of Tenn. Code Ann. § 17-4-115(c) meaningless. We therefore hold that when the Commission filed the Report of the Judicial Evaluation Commission on April 10, 1998, and did not recommend that Judge Todd be retained in office, the provisions of the Tennessee Plan became inapplicable to the election for Judge Todd's seat on the Court of Appeals under the plain language of Tenn. Code Ann. § 17-4-115(c) until after the open election specified in that subsection.

Judge Todd's subsequent failure to file any declaration of candidacy cannot logically change the result. Otherwise, rather than being inapplicable to the election until after a new judge is elected as expressly commanded by Tenn. Code Ann. § 17-4-115(c), the Tennessee Plan would merely be conditionally suspended until such time as the incumbent failed to file a Declaration of Candidacy. This would be especially anomalous; when a judge's eight year term of office expired, political parties, potential candidates and the electorate itself would not know the manner of filling such a regularly recurring vacancy

---

[3]  The plaintiff agrees with the defendants that Tenn. Code Ann. § 17-4-116 was, by its terms, applicable to the election, stated so at oral argument before this Court, and reaffirmed this position in a brief lodged subsequent to oral argument. The plaintiff apparently anticipated, correctly as it turns out, that this Court would not reach the merits of the plaintiff's constitutional arguments unless it was convinced that the Tennessee Plan was applicable to the election to fill Judge Todd's seat.

on the Court of Appeals *until the expiration of the qualifying deadline for the election*[4]. This cannot have been the Legislature's intent, and is certainly not the law unless Tenn. Code Ann. § 17-4-115(c) is entirely inoperative. Therefore, Tenn. Code Ann. § 17-4-116, as a part of the Tennessee Plan, must apply only to the situation in which an incumbent appellate court judge *whose retention has been recommended by the Commission* fails to file a declaration of candidacy or withdraws as a candidate. This, in fact, seems the plain and obvious meaning of Tenn. Code Ann. § 17-4-115 as understood by Thompson himself as expressed in his March 27, 1998 letter to the plaintiff. It is puzzling that Thompson changed his interpretation, and it is even more puzzling that the plaintiff acquiesced in Thompson's new, and strained, interpretation. One might be forgiven for suspecting that both sides overlooked Tenn. Code Ann. § 17-4-115(c), in their haste to test the constitutionality of the Tennessee Plan.

Since we hold that the Tennessee Plan was inapplicable to the election to fill Judge Todd's seat for the term commencing September 1, 1998, we need not reach any of the constitutional challenges to the Tennessee Plan advanced by the plaintiff. As already pointed out, in the trial court, the plaintiff never challenged the defendants' interpretation of the Tennessee Plan as applicable to the election in question. Our jurisdiction is appellate only, and we are not in a position to rule upon claims which the plaintiff might have asserted, but failed to assert, in the trial court. Moreover, while it appears from the meager record before us that the plaintiff properly qualified to have his name placed on the ballot for the August 6, 1998 election to fill Judge Todd's seat, an election which never occurred, the courts cannot turn back the constitutional clock. Article VII, § 5 of the Constitution of Tennessee prohibits special elections to fill a vacancy in the office of Judge except at the time fixed for the biennial elections, and the next such election will not occur until August of the year 2000.[5]

---

[4] As a direct consequence of Thompson's erroneous application of Tenn. Code Ann. § 17-4 116 to the facts of this case, with which the plaintiff acquiesced, there *was* no August 6 election--retention or otherwise--to fill Judge Todd's seat, *because there were no candidates.* This affront to the democratic process apparently troubles neither party. The practical consequence of the parties' erroneous reading of the statute is that the judge whose retention has not been recommended would have the power to determine, by filing or failing to file a declaration of candidacy, whether or not there would be a contested election to fill his seat at the expiration of his term of office. We can think of no principled reason why the electoral process may be frustrated by an incumbent judge whose retention has not been approved.

[5] Indeed, we might be inclined to consider the appeal moot, but for the fact that "interests of a public character and of importance in the administration of justice generally are involved."

We therefore REVERSE the decision of the Court of Appeals and REMAND this case to the trial court for further proceedings not inconsistent with this opinion.

Costs of the appeal are taxed to the plaintiff, Robert L. DeLaney.

_____
Ames Davis, C.J., Special Supreme Court

Concur:
Benjamin Hooks, J., Special Supreme Court
Gary D. Gerbitz, J., Special Supreme Court

Dissent:
Robert D. Arnold, J., Special Supreme Court

Concurring in Dissent:
Jeanie M. Todd, J., Special Supreme Court

_____

McCanless v. Klein, 182 Tenn. 631, 638, 188 S.W. 2d 745, 747 (Tenn. 1945).