# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 3, 2002 Session

## STATE OF TENNESSEE v. KRISTOPHER ROBERTS

**Direct Appeal from the Juvenile Court for Tipton County**
**No. 5401     Joseph H. Walker, Judge**

---

**No. W2001-01702-COA-R3-JV - Filed August 6, 2002**

---

This case involves a juvenile's appeal from an adjudication of delinquency. The jury found that the juvenile was guilty of disorderly conduct as a result of his actions at the Tipton County School Board building. The jury also found the juvenile guilty of assault and resisting arrest due to his actions in the Juvenile Court of Tipton County. We affirm the jury's verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., and ALAN E. HIGHERS, J., joined.

C. Michael Robbins, Memphis, Tennessee, for the appellant, Kristopher Roberts.

Paul G. Summers, Attorney General and Reporter and Mark E. Davidson, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

Kristopher Roberts was a student in the Tipton County Alternative School. Mr. Roberts and his mother, Judy Sexton, were concerned about some of his school credits. As a result, Mr. Roberts and Ms. Sexton went to the Tipton County School Board building to meet with Russell Lindsey, the supervisor of the alternative school. This meeting was unscheduled, causing Mr. Roberts and his mother to wait about forty-five minutes to see Mr. Lindsey.

When Mr. Roberts and Ms. Sexton met with Mr. Lindsey, the atmosphere was tense. Mr. Lindsey determined that he could not provide Mr. Roberts and Ms. Sexton the information they sought, because he did not deal with curriculum matters. Consequently, Mr. Lindsey directed Mr. Roberts and Ms. Sexton to Morris Jones, the administrator in charge of curriculum matters.

From that point, the conversation escalated into a more heated discussion. Mr. Roberts and Ms. Sexton decided to leave, and Mr. Roberts said to Mr. Lindsey, "I'll take care of you." Mr. Lindsey asked what he meant, and Mr. Roberts replied, "You interpret it anyway you want to take it." Mr. Lindsey interpreted the statement as a threat and told his assistant to call 911.

Mr. Roberts and his mother then proceeded to leave the building. As he was leaving, Mr. Roberts told Mr. Lindsey to "come on outside." While Mr. Roberts was outside the building, he made physical gestures which Mr. Lindsey interpreted "as an invitation to come outside." Mr. Lindsey remained inside the building. Thereafter, the police arrived, and Mr. Roberts left the property.

As a result of this incident, Mr. Lindsey signed a petition charging Mr. Roberts with assault. Mr. Roberts appeared before the Tipton County Juvenile Court on February 8, 2001 to answer to this charge. In disposing of the case, the court had to determine if Mr. Roberts was in compliance with his school program. The court found that Mr. Roberts was not in compliance with the program, so the court continued the case for thirty days.

While speaking to Mr. Roberts, Judge Peeler, the trial judge, noted that Mr. Roberts was "clutching his fist" and "gritting his teeth," leading the court to conclude that he was "very angry." Mr. Roberts also made physical gestures that the judge interpreted as "how dare you or what an idiot." The judge felt that this reaction was inappropriate and contentious.

In order to "get his attention," Judge Peeler told Mr. Roberts to have a seat in an area of benches inside the courtroom. Mr. Roberts walked in the direction of the benches, but he held his arms out and made facial gestures. Mr. Roberts arrived at the benches, but failed to sit down. An officer asked Mr. Roberts to sit, and when he did not comply, the judge ordered the officer to take Mr. Roberts out of the court room and into a holding cell. The officer took Mr. Roberts's arm, and Mr. Roberts reacted violently. Mr. Roberts struck the officer, causing four other officers to respond. An officer was injured in the ensuing scuffle, but the five officers were finally able to subdue Mr. Roberts.

After this hearing, Mr. Roberts was charged with three additional petitions. These were charges of aggravated assault, resisting arrest, and unruly behavior.[1] Following a mental health evaluation of Mr. Roberts, the juvenile court found him to be a delinquent child. The court entered guilty verdicts on the charges of disorderly conduct, assault, and resisting arrest. The court dismissed the unruly behavior petition.

Mr. Roberts appealed the verdict to the Tipton County Circuit Court. A jury found Mr. Roberts guilty of the charges of disorderly conduct, assault, and resisting arrest. Mr. Roberts appeals this decision. The issues, as stated by Mr. Roberts, are as follows:

---

[1]The aggravated assault charge was later amended to assault.

I.	Is the evidence sufficient to support the adjudication of delinquency based upon the offense of disorderly conduct?

II.	Did the trial court err in its order overruling the motion for judgment of acquittal by punishing the respondent for his exercise of protected constitutional rights?

III.	Did the trial court err by refusing to grant the respondent's request for a cautionary instruction to the jury to disregard objectionable remarks volunteered by Judge Peeler during his direct examination?

In his first issue, Mr. Roberts contends that the evidence was insufficient to support a conviction on the charge of disorderly conduct. The disorderly conduct charge and subsequent conviction stemmed from the incident at the Tipton County School Board involving Mr. Lindsey.[2] At trial, the State alleged that Mr. Roberts engaged in threatening behavior in violation of section 39-17-305(a)(1) of the Tennessee Code. Pursuant to this section, "[a] person commits an offense who, in a public place and with intent to cause public annoyance or alarm: (1) Engages in fighting or in violent or threatening behavior." Tenn. Code Ann. § 39-17-305(a)(1) (1997). Mr. Roberts asserts that the evidence was insufficient to support this charge.

When a defendant challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas*, 286 S.W.2d at 859. This Court must afford the prevailing party the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *Id.*

Mere verbal epithets, unless the epithets can be considered "fighting words," cannot by themselves support a conviction under Tennessee's disorderly conduct statute. *State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Crim. App. 1994). "Fighting words" are "those which by their very

---

[2]Mr. Roberts was initially charged with assault, however, the juvenile court later found him guilty of the lesser charge of disorderly conduct.

utterance inflict injury or tend to incite an immediate breach of the peace." ***Id.*** (quoting ***Chaplinsky v. New Hampshire***, 315 U.S. 568, 572 (1942); ***Garvey v. State***, 537 S.W.2d 709, 710 (Tenn. Crim App. 1975)). Verbal epithets accompanied by some physically threatening behavior, however, will support a conviction under our disorderly conduct statute. ***Id.*** at 831-32.

A direct threat of harm will also support a conviction under our statute. ***State v. Milsaps***, No. 03C01-9409-CR-00313, 1996 Tenn. Crim. App. LEXIS 419, at *4 (Tenn. Crim. App. July 17, 1996) (***no perm. app. filed***). This is in contrast to insulting or obscene words that do not rise to the level of "fighting words." A direct threat of harm is more than an insult, it is "threatening behavior" as contemplated by our statute.

In this case, Mr. Roberts made statements to Mr. Lindsey that, when viewed in the light most favorable to the State, could have been found to be threatening behavior by a rational trier of fact beyond reasonable doubt. Mr. Roberts's statements were not mere epithets or insults; they were threatening in nature and support a finding of threatening behavior. Further, Mr. Lindsey's testimony supports this finding. Mr. Lindsey stated that he "felt apprehensive" and took Mr. Roberts's statements as threats. Mr. Lindsey's perception of the matter was further illustrated by his decision to direct his assistant to place an emergency call to the police. Finally, Mr. Roberts made threatening gestures to Mr. Lindsey soon after he challenged Mr. Lindsey to "come on outside." Accordingly, we affirm the jury's verdict on the disorderly conduct charge.

Mr. Roberts's next issue regards the incident that occurred in the Tipton County Juvenile Court. As a result of Mr. Roberts's altercation with the five officers, the jury convicted him of assault and resisting arrest.

On appeal, Mr. Roberts contends that his actions before the court were protected speech, guaranteed by the First Amendment of the United States Constitution and Article I, Section 19 of the Tennessee Constitution. Mr. Roberts also contends that the court violated his right to be free from an unreasonable seizure. In short, Mr. Roberts maintains that Judge Peeler had no basis to order him to sit in the area of benches and further, had no reason to instruct the officer to take him to a holding cell.

Mr. Roberts argues that the court's actions were arbitrary and oppressive. It follows, according to Mr. Roberts, that he had the right to resist the court's arbitrary and oppressive actions. In support of his argument, Mr. Roberts cites Article I, Section 2 of the Tennessee Constitution which condemns the doctrine of nonresistance by stating as follows: "That government being instituted for the common benefit, the doctrine of non-resistance against arbitrary power and oppression is absurd, slavish, and destructive of the good and happiness of mankind."

As Mr. Roberts contends that the Tennessee Constitution protects his actions, he argues that section 39-16-602(b) is unconstitutional, because it abolishes his right to resist an unlawful arrest. Section 39-16-602 of the Tennessee Code states as follows:

(a) It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

(b) Except as provided in § 39-11-611, it is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful. . . .[3]

Tenn. Code Ann. § 39-16-602 (Supp. 2001).

The trial court is vested with "a deep responsibility for the orderly and dignified conduct of courtroom proceedings." *State v. Land*, 34 S.W.3d 516, 528 (Tenn. Crim. App. 2000). To this end, the Tennessee Code states that "[e]very court has the power to . . . [e]nforce order in its immediate presence, or as near thereto as is necessary to prevent interruption, disturbance, or hindrance to its proceedings . . . . Tenn. Code Ann. § 16-1-102(1) (1994). One mechanism courts use to maintain orderly proceedings is the power to punish conduct as contempt. *See, e.g., Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996). Courts have the discretion to punish for the contempt of court in certain delineated situations. Tenn. Code Ann. § 29-9-102 (2000). For instance, courts can use contempt powers to punish "[t]he wilful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice." *Id.* at § 29-9-102(1).

In this case, the proof establishes that Mr. Roberts acted in a contentious and disruptive manner before the court. The proof further establishes that Mr. Roberts failed to follow the court's orders. The court had the right and the responsibility to punish this conduct. The fact that the court did not hold Mr. Roberts in contempt is of no effect.[4] The court's use of its power to punish for contempt is discretionary and further, the court's chosen manner of discipline in this case was reasonable.

The court did not act arbitrarily in ordering Mr. Roberts to sit in the area of benches when Mr. Roberts made inappropriate gestures before the court. Further, once Mr. Roberts failed to comply with the court's order, the court did not act arbitrarily when it instructed the officer to take Mr. Roberts to the holding cell. Accordingly, there is no need to address Mr. Roberts's constitutional concerns regarding section 39-16-602(b) of the Tennessee Code in this case. It is well-settled in Tennessee that courts will only decide a constitutional question when it is absolutely necessary in order to properly resolve the case. *DeLaney v. Thompson*, 982 S.W.2d 857, 858 (Tenn. 1998). We affirm the jury's decision to find Mr. Roberts guilty of assault and resisting arrest.

---

[3]Section 39-11-611(e) of the Tennessee Code provides a limited right of self defense to an arrest.

[4]Judge Peeler stated that he did not hold Mr. Roberts in contempt because "we had much more serious charges" and because "[t]here wasn't any reason to heap coals on the fire."

In Mr. Roberts's final issue, he contends that court erred by failing to instruct the jury to disregard certain remarks offered by Judge Peeler during his direct examination. In Judge Peeler's testimony, he stated that he did not like Mr. Roberts's home school study program. Judge Peeler further stated that Mr. Roberts "was borderline being put out of that program for not complying with the rules." Mr. Roberts objected to this testimony, and the court sustained the objection. When Mr. Roberts asked the court to "instruct the jury to disregard the remark about the bad report or whatever," the court refused. Mr. Roberts maintains that the court erred in failing to instruct the jury to disregard those comments.

The trial court has a great deal of discretion in making its evidentiary decisions. *White v. Vanderbilt University*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999); *Tire Shredders, Inc. v. ERM-North Central*, 15 S.W.3d 849, 859 (Tenn. Ct. App. 1999). In refusing to instruct the jury as Mr. Roberts requested, the court did not abuse that discretion. The jury had already heard testimony regarding Mr. Roberts's lack of compliance with the compulsory attendance law. Mr. Roberts failed to object to this testimony. Therefore, the jury already knew that Mr. Roberts was in court originally to address matters regarding his lack of compliance with attendance laws.

Additionally, even if we were to determine that the court erred by refusing to issue a curative instruction to the jury, the error would be harmless. The record contains ample evidence in support of the jury's findings; moreover, any effect of this comment is speculative at best. Accordingly, we do not find that the court's refusal to issue a curative instruction more probably than not affected the judgment of the jury or prejudiced the judicial process. Tenn. R. App. P. 36(b); *See, e.g.*, *State v. Speck*, 944 S.W.2d 598, 602 (Tenn. 1997). This issue is without merit.

We affirm the decision of the trial court. Costs of this appeal are taxed to the Appellant, Kristopher Roberts, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE