IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 19, 2003


**STATE OF TENNESSEE, EX REL., VIKKI DAVIS**
**v.**
**JOHN W. DAVIS**


**An Appeal from the Chancery Court for Haywood County**
**No. 11446    George R. Ellis, Chancellor**

---

**No. W2001-02565-COA-R3-CV - Filed January 22, 2004**

---

This case involves a judge's *sua sponte* decision not to enforce a Tennessee statute. The parties divorced in 1997, and the mother was awarded custody of the parties' minor daughter. The father was required to pay child support. The father failed to pay, and the State filed a petition for contempt on the mother's behalf. The father was found in contempt for his failure to pay. *Sua sponte*, the trial judge refused to enforce the Tennessee statute requiring the payment of a child support processing fee, citing a perceived violation of an unspecified federal law. The State appeals. We reverse, finding that the trial judge erred in refusing to apply the statute.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General and Reporter, and Stuart F. Wilson-Patton, Senior Counsel, Nashville, Tennessee, for the appellant, State of Tennessee ex rel. Vikki Davis.

John W. Davis, *pro se.*


**OPINION**


Petitioner/Appellant Vikki Davis ("Mother") and Respondent/Appellee John W. Davis ("Father") married in 1994 and had one child, born on January 27, 1995. They divorced in 1997, and custody of the parties' child was awarded to Mother. Father was ordered to pay child support in the amount of $51.00 per week, "plus Clerk's fee."

In February 2000, Mother filed a petition to increase child support based on an increase in Father's income. On April 19, 2000, the trial court increased Father's child support obligation to $274 per month, "plus 5% commission," for a total of $287.70 per month, in accordance with the

Tennessee Child Support Guidelines. *See* Tenn. Code Ann. § 8-21-403 (2002) (requiring 5% fee to be paid to court clerk for processing child support payments). The order required Father to make his child support payments to the Central Child Support Receipting Unit. *See* Tenn. Code Ann. § 36-5-116 (2002 & Supp. 2003) (establishing the Tennessee Department of Human Services as Tennessee's central collection and disbursement unit, as required by federal statute, receiving the 5% processing fee).

In May 2001, a petition for contempt was filed against Father by the State of Tennessee on Mother's behalf. The petition alleged that Father was in arrears in the amount of $857.40. Father posted a bond in the amount of the alleged arrears, $857.40. A hearing on the petition was set for June 28, 2001.

The hearing was conducted as scheduled on June 28, 2001. All parties were present, and Father testified on his own behalf, stating that he was looking for a job. On July 11, 2001, the trial court entered an order concluding that Father was $1,679.40 in arrears as of the date of the hearing. The trial court held that the full amount of the bond, $857.40, would be applied toward Father's total outstanding arrearage. It ordered further that the $42.87 statutory processing fee would be held in abeyance and not deducted from the $857.40 that was credited to Father. Thus, the net amount of Father's outstanding arrearage was determined to be $822.00.

On July 26, 2001, the trial court conducted another hearing. Father testified that he was still looking for a job. At that time, his accrued arrearage was "$1,136.83 plus commission." The matter was continued until August 2001.

Another hearing was held on August 23, 2001. Father was found to be in arrears in the amount of $1,410.83 and was still in contempt. Father was ordered to be held in jail until he purged his contempt by paying the arrearage of $1,410.83, plus costs. The trial court denied the request to collect the statutory processing fee. *Sua sponte*, the trial court stated that it would no longer sign any orders which deducted the 5% statutory processing fee, in this case and in all other child support cases within the trial court's jurisdiction. Another hearing was set for September 13, 2001.

In response, the State filed a motion to alter or amend the trial court's order. The State asked the trial court to amend its order to provide for collection of the 5% statutory fee, noting that the State was authorized to collect the fee under Tennessee Code Annotated §§ 8-21-403(a) and 36-5-1116(a). The State, however, also represented to the trial court that it intended to discontinue its collection of the statutory fee as of November 1, 2001. The State cited an unrelated class action lawsuit pending before the Circuit Court in Davidson County at that time, in which Davidson County Circuit Court Judge Walter Kurtz reportedly had entered an interim order stating that the State's method of collecting the 5% fee was in violation of unspecified federal regulations. As a result, the State had determined that, as of November 1, 2001, it would no longer collect the statutory fee, citing the time needed "to facilitate this tremendous transition." Based on that information, the State asked the trial court in this case to amend its previous judgment to allow for the collection of the 5% fee.

A hearing on the State's motion to alter or amend was held on September 19, 2001. The attorneys for Mother and Father appeared, but did not argue. The Attorney General argued on behalf of the Tennessee Department of Human Services. In the hearing, the State asked the trial court to permit collection of the fee, or at least to delay a decision until November 1, 2001, when the State would cease collecting the fee. The State argued that no party to the case had raised the issue of whether the statutory processing fee violated any federal regulations or federal statutes. It noted that any question regarding the propriety of the fee came from outside the record, namely, from a letter of an unnamed federal official to DHS expressing an opinion that the fee violated unspecified federal law, and an interim order by Judge Kurtz in the pending class action lawsuit finding that the fee violated a federal law. The State made it clear that no issue regarding the constitutionality of the fee had been raised in any forum.

The trial judge indicated that he had knowledge outside the record of the class action in Circuit Court in Davidson County, stating, "Well, I know this order is from the judge that's hearing the matter. And I also know what the Federal regulation says. So, this Court has notice. It's not a matter of I didn't know it." The trial judge added, "And I also know about the notice that the State of Tennessee got from the Federal Government," an apparent reference to the letter to DHS from an unnamed federal official, to which the State referred in the hearing but which was not made part of the appellate record. Without discussion of the substantive legal issues, the trial court stated, "The simple issue, I raised my hand to uphold the law. I know this five percent is in violation of the law." The trial court concluded, ". . . [T]his Court knows this is a violation of Federal Law. And as I said earlier, this Court is going to uphold the law and that's the reason that I'm not signing the orders with the assigned commission in it now." On October 9, 2001, the trial court entered an order, denying the State's motion to permit collection of the processing fee and stating:

> The Chancellor's oath of office prohibits him from signing any child support order that includes a requirement that the parent ordered to pay child support, such as the respondent in this case, pay a 5% child support processing fee, because the Davidson County Circuit Court entered an order on June 12, 2001, in which it held the manner in which the fee was taken off the top of each collection to be a violation of federal law, and because in March of 2001, federal officials in Atlanta issued a letter to the Tennessee Department of Human Services, which expressed the view that the manner in which the fee was collected was in violation of federal policy.

The State then filed this appeal. Neither Mother nor Father appeal the trial court's order.

On appeal, the State argues that the trial court erred in, *sua sponte*, raising the issue of the legality or constitutionality of Tennessee Code Annotated §§ 8-21-403(a) and 36-5-116(a)(2). The State contends that the trial court was without jurisdiction to rule on the legality of the statutory fee, where the issue was not raised by either of the parties and the State was given no notice and no opportunity to defend the Tennessee statutes and address the substantive issue.

-3-

In support of its argument, the State cites ***State ex. rel. Armstrong v. Coleman***, No. W2000-01122-COA-R3-CV, 2001 WL 557991 (Tenn. Ct. App. May 24, 2001), in which the juvenile court refused to follow the Tennessee Child Support Guidelines, finding that they violated the equal protection clause of the state and federal constitutions. ***Id.*** at *1. In ***Armstrong***, an increase in child support payments was sought against a payor parent, where the payor parent had also been ordered to pay child support for additional children born after the subject child. The child support guidelines did not generally permit credit to a payor parent for obligations imposed by child support orders concerning children of the payor parent born after the subject child. ***Id.*** The parties raised no issue regarding the legality or constitutionality of the guidelines. ***Id.*** at *4. The juvenile court simply refused to follow the guidelines in this respect and, in response to the State's motion to alter or amend, stated that it had concluded that the guidelines violated the equal protection clause of the state and federal constitutions. ***Id.*** at *2-*4. The State appealed, arguing that the constitutionality of the guidelines was not properly before the juvenile court, because it was not raised by any party and was raised for the first time in response to a motion to alter or amend. ***Id.*** at *4.

The appellate court likened the posture of the case to the situation in which a constitutional issue is raised by a party for the first time in a post-trial motion. ***Id.*** at *5. It cited a previous case observing that "there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." ***Id.*** (quoting ***In Re: Adoption of Female Child, E.N.R.***, 42 S.W.3d 26, 31(Tenn. 2001)). The appellate court noted the general rule that issues not raised in the trial court, including issues regarding the constitutionality of a statute, will not be considered on appeal "unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion." ***Id.*** (quoting ***Lawrence v. Stanford***, 655 S.W.2d 927, 927 (Tenn. 1983)). Finding that the child support guidelines were not patently unconstitutional, the appellate court stated:

> Therefore, we hold that the trial court improperly adjudicated the issue of the constitutionality of the guidelines, because the issue of constitutionality was not timely presented in order to properly litigate the issue.
>
> Moreover, as we noted, the trial court raised the constitutional issue *sua sponte*, and it appears that there was no need to do so. It is the duty of all courts to pass on constitutional questions only when it is absolutely necessary for the determination of the case and of the rights of the parties to the litigation. *See Delaney v. Thompson*, 982 S.W.2d 857 (Tenn. 1998). . . . Under these circumstances, we feel that the trial court acted precipitously in deciding a constitutional question.

***Id.*** In light of its holding that the trial court improperly issued a *sua sponte* ruling on a constitutional question, the appellate court did not consider on appeal the constitutionality of the guidelines. ***Id.*** at *6.

In this case, as in ***Armstrong***, the trial court, *sua sponte*, stated its conclusion that the child support processing fee violated an unspecified federal law, and made a blanket assertion that it would no longer enforce the statutory fee. No issue regarding the legality of the fee had been raised by any party, or even by the trial court, prior to this. Scrambling in response, the State filed a motion to alter or amend the trial court's order, referring to a class action lawsuit in Davidson County,[1] unrelated to the instant case, and asserting that the State would no longer collect the statutory fee after November 1, 2001. This was summarily denied, citing the trial judge's conclusion that his oath of office[2] prohibited him from enforcing a Tennessee statute that conflicted with an unspecified federal regulation or policy. There was no discussion of the substantive legal issue, or even a reference to the specific federal regulation, statute, or policy in question. Even assuming that the Tennessee statutory fee conflicted with a federal law of some sort, there was no discussion of the effect of such a conflict, whether the federal regulations preempted the Tennessee statute, whether it resulted in the State's loss of federal funds, or whether the fee was voided in whole or in part. This is in contrast to a constitutional issue, in which a Tennessee statute that conflicts with a provision of the state or federal constitution is generally held void in whole or in part.

In short, regardless of the merits of the trial court's legal conclusion, as in ***Armstrong***, the issue of the legality of the processing fee "was not timely presented in order to properly litigate the issue," and the trial court "acted precipitously" in holding that the statutory fee violated federal law and would therefore not be enforced. Consequently, the trial court's order denying the State's motion to alter or amend must be reversed, and the case remanded for the trial court to proceed in a manner not inconsistent with this Opinion.

As in ***Armstrong***, this holding pretermits any issue regarding the legality of the fee.

The decision of the trial court is reversed, and the cause is remanded for further proceedings consistent with this Opinion. Costs are taxed to Appellant, State of Tennessee, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[1] In its motion to alter or amend the State cites ***Harp v. Metcalf, Comm'r, State of Tenn. Dep't of Human Servs.***, a class action lawsuit pending at that time before Davidson County Circuit Judge Walter Kurtz. In his comments at the hearing, the trial judge in the instant case seemed to indicate that he had knowledge of this class action lawsuit from outside the record in this case. No documents from the class action lawsuit were made part of they record. The resolution of the Davidson County lawsuit and the status of the 5% child support processing fee after November 1, 2001, are not included in our appellate record.

[2] Tennessee Code Annotated § 17-1-104 states that every judge in the State must take "an oath or affirmation to support the constitutions of the United States and that of this state, and to administer justice without respect of persons, and impartially to discharge all the duties incumbent on a judge or chancellor, to the best of the judge's or chancellor's skill and ability."

.