IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2012 Session

## CITY OF MEMPHIS, TENNESSEE ET AL. v. TRE HARGETT, SECRETARY OF STATE ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 12-1269-II      Carol L. McCoy, Chancellor**

**No. M2012-02141-COA-R3-CV - Filed October 25, 2012**

The City of Memphis and two persons who had to cast provisional ballots in the August 2012 election because they lacked sufficient photographic identification filed a declaratory judgment action seeking to have the photographic identification requirement for voting declared unconstitutional, or to have the Memphis library photographic identification card declared sufficient identification for purposes of the voting law. The trial court found that the plaintiffs did not have standing, that the photographic identification requirement was constitutional and that the Memphis library photographic identification card was not acceptable under the law as sufficient identification for voting. The plaintiffs appealed. We find that the plaintiffs have standing, that the law is constitutional and that the Memphis library photographic identification card is acceptable under the law as sufficient proof of identification for voting.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, P.J., and RICHARD H. DINKINS, J., joined.

George E. Barrett and Douglas S. Johnston, Jr., Nashville, Tennessee; Herman Morris, Jr. and Regina Morrison Newman, Memphis, Tennessee, for the appellants, City of Memphis, Daphne Turner-Golden, and Sullistine Bell.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Steven A. Hart, Special Counsel; and Janet M. Kleinfelter, Deputy Attorney General; Nashville, Tennessee, for the appellees, Tre Hargett, Secretary of State; Robert E. Cooper, Jr., Attorney General; and Mark Goins, State Coordinator of Elections.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

Most of the following history is taken from the time line adopted by the trial court. The facts are not in dispute.

- On May 20, 2011, the Tennessee General Assembly adopts Public Chapter 323 and the Governor signs the Act into law on May 30, 2011. The Act states that it will go into effect as of January 1, 2012. The provisions of the Act are codified at Tenn. Code Ann. § 2-7-112(c) and (f).

- The State Division of Elections immediately begins to develop and implement plan to implement the requirements of Public Chapter 323 and in particular, the education of election officials and the public on the requirements of the Act. [Citation to the record omitted].

- As part of plan for implementing requirements of Voter Photo ID Act, State Division of Elections sends letter to every registered voter with a non-photo driver's license to inform them about the requirements and to encourage them to contact the State Division of Elections to determine if they have a valid photo ID and/or how to obtain one. [Citation to the record omitted]

- On January 18, 2012, the Memphis City Attorney issues an opinion to the Mayor of the City of Memphis opining that the City of Memphis Public Library was a "state entity" and, therefore, the photo library cards issued by the Library were valid forms of photo identification for purposes of the Voter Photo ID Act. [Citation to the record omitted]

- On January 18, 2012, Plaintiff Daphne Turner-Golden goes to Driver's License Station in Memphis to renew her license which expires the next day. Ms. Turner-Golden's license was actually suspended several years earlier, so she pays for and obtains a photo identification license. [Citation to the record omitted]

- In March 2012, the head of intergovernmental relations for the City of Memphis approaches the Memphis Public Library to see if the Library would be interested in pursuing a photo library card for its patrons for a variety of purposes. [Citation to the record omitted]

- In late June 2012, Plaintiff Turner-Golden's purse containing her photo identification license issued by the Tennessee Department of Safety is allegedly stolen. No police report is filed. Other than her social security card, Ms. Turner-Golden did not attempt to replace any of the items in her purse. [Citation to the record omitted]

- On July 5, 2012, City of Memphis Mayor Wharton conducts a press conference in which he announces the Memphis Public Library's *new* photo library card. Mayor Wharton also announces that the photo library card can be used for voting in the upcoming August primary election. Previously there had never been a photo on the library cards and there do not appear to be any other Tennessee cities or counties that issue a photographic library card. [Citation to the record omitted]

- On July 6, 2012, the State Election Coordinator sends an email to the Shelby County Election Commission stating that the City of Memphis Public Library is not a state entity and, therefore, its photo library cards are not photo identification cards issued by a state entity as required by the Voter Photo ID Act. [Citation to the record omitted]

- On July 10, 2012, the State Election Coordinator issues a press release stating that the Memphis Public Library card is not an acceptable form of photo identification for purposes of voting in the upcoming August primary election. [Citation to the record omitted]

- On Monday, July 23, 2012, the Chief of Staff for the Mayor of the City of Memphis, Mr. Robert White, takes Plaintiff Turner-Golden to the Poplar Avenue branch of the Memphis Public Library to get a photo library card. Mr. White then takes Ms. Turner-Golden to two different early voting locations so that she can vote using her Memphis library card. At each early voting location Ms. Turner-Golden is told that her photo library card is not a valid form of identification and is provided with information about what is a valid form. At the second location, Ms. Turner-Golden casts a provisional ballot and is told that she needs to return to the Shelby County Election Commission by August 6 with

a valid photo ID in order to have her ballot counted. There is a state driver's license station not far from the library branch and polling places visited by Ms. Turner-Golden.

- On July 24, 2012, Plaintiffs City of Memphis and Ms. Turner-Golden file suit in the United States District Court for the Middle District of Tennessee against the Tennessee Secretary of State and the State Election Coordinator. The suit alleges that the Voter Photo I[D] Act, as interpreted and applied by the State of Tennessee, violates Plaintiffs' rights under the Equal Protection Clause and seeks a declaration that the photo library card issued by the City of Memphis Public Library is a valid form of identification for purposes of voting under the Voter Photo I[D] Act. Plaintiffs requested an immediate hearing on their request for a temporary restraining order requiring the Defendants to accept the Memphis public library card for voting purposes. *See Turner-Golden v. Hargett*, USDC No. 3:12-0765 (MD Tenn).

- On July 25, 2012, a hearing on Plaintiffs' motion for temporary restraining order is held and the motion is denied by the federal court. [Citation to the record omitted] Chief of Staff Robert White attends this hearing. [Citation to the record omitted]

- On July 26, Plaintiffs file a motion for preliminary injunction with the federal court. A hearing on the motion is set for Tuesday, July 31 at 3:00 p.m. The parties are directed to file any briefs with the court 24 hours prior to this hearing.

- On Saturday, July 28, 2012, Chief of Staff Robert White takes Plaintiff Sullistine Bell to the Memphis public library to get a new photo library card. Mr. White then takes Ms. Bell to an early voting location to vote using her library card. Ms. Bell is told that her photo library card is not a valid form of identification and is provided with information about what is a valid form. Ms. Bell casts a provisional ballot and is told that she needs to return to the Shelby County Election Commission by August 6 with a valid photo ID in order to have her ballot counted. [Citation to the record omitted]

- On Monday, July 30, 2012, Plaintiffs file an amended complaint in the federal court adding Ms. Bell as a plaintiff.

-4-

- On July 31, 2012, a hearing is held on Plaintiffs' motion for a preliminary injunction. At the conclusion of the hearing, the federal court denies the motion finding that: (1) the State Election Coordinator had properly interpreted the provisions of the Voter Photo I[D] Act and, therefore, the Plaintiffs could not demonstrate a likelihood of success on the merits of their claim and (2) Plaintiffs could not demonstrate any immediate and irreparable harm. [Citation to the record omitted]

- August State and Federal Primary election is held on August 2, 2012. There is a record [turn out] for this election with over 700,000 voting. In Shelby County, the voter turnout increased from approximately 106,000 in the August 2008 election to over 132,000 in the August 2012 election. There are 32 provisional votes cast in Shelby County by voters who did not have a valid photo ID. Four of the voters return to the Election Commission with a valid photo ID by the August 6 deadline and their votes are counted. Of the remaining 28 provisional voters, 20 have been issued a driver's license by the Tennessee Department of Safety. An additional 4 have been issued a non-photo driver's license and thus are eligible to vote absentee. Of the remaining four provisional voters, one is also eligible to vote absentee. [Citation to the record omitted]

- On August 7, 2012, Plaintiffs seek leave to amend their complaint in federal court to add a claim under 42 U.S.C. § 1983 that the Voter Photo I[D] Act violates Art. IV of the Tennessee Constitution by adding a qualification for the right to vote in addition to those exclusive qualifications delineated in that constitutional provision. Defendants file a response on August 13 arguing that, among other things, amendment was futile because 42 U.S.C. § 1983 does not provide a cause of action for violation of state constitutions.

- On August 24, 2012, Plaintiffs file a notice of voluntary dismissal of their lawsuit in federal court.

- On August 31, 2012, Plaintiffs file their Verified Complaint for Declaratory and Injunctive Relief with [the Davidson County Chancery Court]. The Complaint is only verified by co-counsel, Regina Newman, with the City of Memphis Attorney's Office.

• On September 5, 2012, Counsel for the Defendants send a letter to Plaintiffs' counsel reiterating publicly available information about how Plaintiff Bell could vote by absentee ballot and how both Plaintiffs Bell and Turner-Golden could obtain free photo identification cards for voting from the Tennessee Department of Safety. . . . This same information had been discussed at the July 31 preliminary injunction hearing and had been recognized by the federal court in its order as part of the reason why Plaintiffs could not demonstrate any immediate and irreparable harm. [Citation to the record omitted]

• On September 6, 2012, Plaintiffs file in [the Davidson County Chancery Court] their motion for temporary injunction and motion for expedited hearing on the injunction, asserting that such expedited hearing is necessary because of the upcoming November election and the risk of irreparable harm to the Plaintiffs. Specifically, Plaintiffs allege that it is too burdensome for Ms. Turner-Golden and Ms. Bell to obtain a valid photo identification before the November 6 election and, therefore they would not be allowed to vote if the injunction is not granted. Plaintiffs do not, however, file any affidavits from Ms. Turner-Golden or Ms. Bell in support of the motion for temporary injunction.

• On September 24, 2012, Plaintiffs file memorandum in support of their motion for permanent injunction along with affidavits of co-counsel Ms. Newman and Plaintiff Ms. Bell, as well as affidavits of three new witnesses.

• November 6 - Election Day

• November 8 - last day to present valid photo identification to County Election Commission to have provisional ballot counted.

Subsequent to the filing of the above timeline, a hearing was held September 26, 2012. At the conclusion of the hearing, the chancellor adopted the timeline of events, found that none of the plaintiffs had standing, found that the complaint did not assert an as-applied challenge to the constitutionality of the Voter Photo ID Act, found that the case was not a class action, found that the statute was not unconstitutional and found that the City of Memphis was not an entity authorized to issue photo identification under the law.

The trial court entered the order reflecting its oral ruling on October 9, 2012. A notice of appeal was filed October 10, and a motion to expedite was filed October 11. The Court of Appeals entered an order directing the expedited filing of the parties' briefs and held the oral argument on October 18, 2012.

## STANDARD OF REVIEW

The factual findings of a trial court are entitled to a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). The trial court's legal determinations are reviewed de novo with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## ANALYSIS

As a preliminary matter, we note that the Voter Photo ID Act has created much controversy and aroused intense feelings among both its supporters and its detractors. The courts do not question the General Assembly's motives or concern themselves with the General Assembly's policy judgments. *Waters v. Farr*, 291 S.W.3d 873, 917-18 (Tenn. 2009). These limitations arise from the separation of powers doctrine found in Article II, Secs. 1 and 2 of the Tennessee Constitution. The separation of powers doctrine places limits on each of the three branches of government. The role of the courts is to "interpret and apply" the law. *Richardson v. Young*, 125 S.W. 664, 668 (Tenn. 1909). Consequently, the judicial branch is the department of the state government that determines the constitutionality and interpretation of statutes.[1]

## STANDING

The trial court found that none of the plaintiffs had standing to pursue this litigation under the Declaratory Judgment Act, Tenn. Code Ann. § 29-14-101 *et seq*. "The primary purpose of the Declaratory Judgment Act is 'to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . .'" *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000) (quoting Tenn. Code Ann. § 29-14-113). The act is "to be liberally construed and administered." *Id.* The act allows a proper plaintiff to challenge the constitutionality of a statute or seek a construction of a statute when the plaintiff does not seek to reach state funds. *Colonial Pipeline Co. v. Morgan,* 263 S.W.3d 827, 853 (Tenn. 2008) ("[w]e hold that sovereign immunity simply does not apply to a declaratory judgment action challenging the constitutionality of a statute against state officers.").

---

[1] The final authority on the constitutionality of a statute and the meaning of a statute rests, of course, with the Tennessee Supreme Court. *State v. Randolph*, 74 S.W.3d 330, 334-35 (Tenn. 2002) (quoting *Miller v. State*, 584 S.W.2d 758, 760 (Tenn. 1979)).

A plaintiff must have standing to seek a declaratory judgment.[2] *State of Tennessee ex rel. DeSelm v. Owings*, 310 S.W.3d 353, 357 (Tenn. Ct. App. 2009).

Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues. Grounded upon "concern about the proper — and properly limited — role of the courts in a democratic society," the doctrine of standing precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed." The doctrine of standing restricts "[t]he exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, . . . to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."

To establish standing, a plaintiff must show three "indispensable" elements "by the same degree of evidence" as other matters on which the plaintiff bears the burden of proof. First, a plaintiff must show a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient. Standing also may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens. Were such injuries sufficient to confer standing, the State would be required to defend against "a profusion of lawsuits" from taxpayers, and a purpose of the standing doctrine would be frustrated.

The second essential element of standing is a causal connection between the claimed injury and the challenged conduct. A plaintiff may satisfy this element by establishing the existence of a "fairly traceable" connection between the alleged injury in fact and the defendant's challenged conduct. The third and final element necessary to establish standing is a showing that the alleged injury is capable of being redressed by a favorable decision of the court.

It is important to note that standing does not depend upon a plaintiff's likelihood of success on the merits; however, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.

---

[2]This is not a class action case.

*Id.* (quoting *Am. Civil Liberties Union v. Darnell*, 195 S.W.3d 612, 619-20 (Tenn. 2006). The declaratory judgment act also requires that there be an actual controversy. *Campbell v. Sundquist*, 926 S.W.2d 250, 257 (citing *Parks v. Alexander*, 608 S.W.2d 881, 891-92 (Tenn. Ct. App. 1980)).

In this instance, all the standing requirements are met. The City of Memphis believes the law allows its photo identification library cards to be used as identification for voting. In fact, their use for voting identification was the reason the City created the photo identification library cards in the first place. The Secretary of State and the Election Coordinator do not interpret the statute as allowing the photo library cards to be sufficient identification. Both Ms. Bell and Ms. Turner-Golden tried to vote using these cards, having no other identification that would meet the requirements of the law, and were forced to cast provisional ballots. All the plaintiffs/appellants allege and show a distinct and palpable injury and an actual controversy, caused by the conduct of state officials and the law, which the courts can redress. They have standing to bring this action.

ADDITIONAL QUALIFICATION

The initial question raised by the appellants is whether requiring a voter to present a specific type of photographic identification constitutes an additional qualification for voting which is not allowed by the Tennessee Constitution or, rather, is a procedural safeguard for voting allowed by the Tennessee Constitution to protect the purity of the ballot box. In other words, the appellants claim that Tenn. Code Ann. § 2-7-112 violates Article I, Sec. 5 and Article IV, Sec. 1 of the Tennessee Constitution.

This matter involves the interpretation of several provisions of the Tennessee Constitution in conjunction with Tenn. Code Ann. § 2-7-112. When interpreting the Tennessee Constitution, it is the court's duty to implement the intent of the people who adopted the provision in question, and that intent is ordinarily derived from the language used in the provision. *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983). The history of the provision can also be used to illuminate its meaning. *Id.*

Article I, Sec. 5 states:

The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction.

"[T]he right of suffrage, as hereinafter declared," refers to Article IV, Sec. 1 of the Tennessee Constitution. *Earnest v. Greene County*, 198 S.W. 417, 417 (Tenn. 1917).[3] Article IV, Sec. 1 states:

> Every person, being eighteen years of age, being a citizen of the United States, being a resident of the State for a period of time as prescribed by the General Assembly, and being duly registered in the county of residence for a period of time prior to the day of any election as prescribed by the General Assembly, shall be entitled to vote in all federal, state, and local elections held in the county or district in which such person resides. All such requirements shall be equal and uniform across the state, and there shall be no other qualification attached to the right of suffrage.
>
> The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box.
>
> All male citizens of this State shall be subject to the performance of military duty, as may be prescribed by law.

Article IV, Sec. 1 not only prescribes the qualifications for voting, but also allows the legislature to enact laws to protect "the purity of the ballot box." This provision was added to the 1870 Constitution.

> It was obvious to the constitution makers that fraud and force might be attempted in our elections, as they had been everywhere else; and so it was deemed proper, though it was probably not essential (for, in the absence of restriction by the constitution, the legislature would have possessed general power on this subject, as all others of legislative nature), to add specific power to enact laws "to secure the freedom of elections and the purity of the ballot box."

*State v. Old*, 34 S.W. 690, 692 (Tenn. 1896). As Chief Justice Turney observed in 1891, the framers of the Tennessee Constitution "naturally concluded the future might develop mischiefs that would not fall within the defined guards, and, to make sure of protection in such emergencies, they granted to the general assembly 'the power to enact laws to secure the freedom of elections and the purity of the ballot-box.'" *Cook v. State*, 16 S.W. 471, 472

---

[3] Article IV, Sec. 1 has been amended since *Earnest* was decided, but the principle applicable to the meaning of the "hereinafter declared" language of Article I, Sec. 5 remains unaltered.

(Tenn. 1891).[4] The inclusion of this provision is evidence of the "strong public policy in favor of preventing fraudulent voting and insuring the purity of the ballot box." *Taylor v. Armentrout*, 632 S.W.2d 107,113(Tenn.1981).[5]

The second paragraph of Article IV, Sec. 1 is "the justification for most of the laws governing elections in Tennessee." *Skidmore v. McDougal*, No. M2007-00237-COA-R3-CV, 2008 WL 886266, at *1 (Tenn. Ct. App. Apr. 1, 2008). Indeed, securing the freedom and purity of the ballot is a stated purpose of the election code. Tenn. Code Ann. § 2-1-102(1)[6]. Of course, the legislature's authority to control the conduct of elections pursuant to Article IV, Sec. 1 does not confer authority to limit the right of suffrage granted in Article I, Sec. 5. *Mills v. Shelby Cnty Election Comm'n*, 218 S.W.3d 33, 41 (Tenn. Ct. App. 2006).

A "qualification" involves the possession of certain qualities or properties. BLACK'S LAW DICTIONARY 1275 (8th ed. 2004) (BLACK'S uses the voter qualifications of residency, age and registration as examples). Presentation of photographic identification is not a quality or characteristic of a person. It is a method by which a voter proves that he or she is a specified person listed on the voter rolls. It is "merely regulatory in nature." *League of Women Voters of Ind. Inc. v. Rokita*, 929 N.E.2d 758,767 (Ind. 2010).[7] Requiring the presentation of photographic identification at the polls does not attach another qualification to the right to vote.

## POLL TAX

The plaintiffs next suggest that the photo identification requirement establishes an impediment or "substantive barrier" to voting akin to a poll tax. "[A] State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter

---

[4] Chief Justice Turney was quoting the 1870 version of Article IV, Sec. 1, but the language remains the same. Turney served in the Confederate Army and witnessed the limitations on the right to vote imposed on ex-confederates by the reconstruction regime of Governor Brownlow.

[5] "The public policy of the state is to be found in its constitution, statutes, judicial decisions and applicable rules of the common law." *State ex rel. Swann v. Pack*, 527 S.W.2d 99, 112 n.17 (Tenn. 1975).

[6] Another goal of the election code is maximizing voter participation. Tenn. Code Ann. § 2-1-102(4).

[7] The 1870 Tennessee Constitution's version of Article IV, Sec. 1 did not make registration a qualification for voting. The 1978 amendment added registration. Prior to the 1978 amendment, registration was statutory and the registration laws were not viewed as prescribing qualifications, but rather as "regulating the exercise of the elective franchise" and as authorized by the General Assembly's constitutional power under Article IV, Sec. 1 "to enact laws to secure the freedom of elections and the purity of the ballot box." *State v. Weaver*, 122 S.W. 465, 465 (Tenn. 1909).

or payment of any fee an electoral standard." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966).

In order to obtain a photo identification card[8] from the Department of Safety and Homeland Security, an individual must present proof of identity to the department. While several types of documents may be used as proof of identity, the most common document used would be a certified copy of the individual's birth certificate. The State of Tennessee charges a fee for certified copies of birth certificates.

The Supreme Court of Missouri determined that Missouri's Photo ID law placed an impermissible burden on the right to vote. A birth certificate, for which one had to pay, was necessary to obtain the free photo identification. The Missouri court concluded:

> While requiring payment to obtain a birth certificate is not a poll tax, as was the $1.50 in *Harper*, it is a fee that qualified, eligible, registered voters who lack an approved photo ID are required to pay in order to exercise their right to free suffrage under the Missouri Constitution. *Harper* makes clear that all fees that impose financial burdens on eligible citizens' right to vote, not merely poll taxes, are impermissible under federal law. There can be no lesser requirement under Missouri law..

*Weinschenk v. State of Missouri*, 203 S.W.3d 201, 213-14 (Mo. 2006) (footnote omitted).

Other courts have taken a different view. The Supreme Court of Michigan offered several reasons that the costs associated with the photo ID did not constitute a poll tax. First, the court observed that persons without the photo ID could sign an affidavit before an election inspector and be allowed to vote. *In re Request for Advisory Op. Regarding Constitutionality of 2005 PA 71*, 740 N.W.2d 444, 464-65 (Mich. 2007). Second, and pertinent to our discussion, the court said:

> This argument represents a dramatic overstatement of what fairly constitutes a "poll tax." It is axiomatic that "(e)lection laws will invariably impose some burden upon individual voters." Thus, the imposition of tangential burdens does not transform a regulation into a poll tax. Moreover, the cost of time and transportation cannot plausibly qualify as a prohibited poll tax because these same "costs" also result from voter registration and in-person voting requirements, which one would not reasonably construe as a poll tax.

---

[8] The department issues two types of identification cards. One can be used only for voting and is free. The other can be used as identification for any purpose and the department charges a fee for this card.

*Id*. at 466. Finally, the Michigan court approved the federal court's observation in *Indiana Democratic Party v. Rokita*, 458 F. Supp.2d 775, 827-28 (S.D. Ind. 2006), aff'd sub nom *Crawford v. Marrion Co. Electon Bd*., 472 F.3d 949 (7th Cir. 2007), aff'd 553 U.S. 181 (2008), that birth certificate fees were not "sufficiently tied to the requirements of voting as to constitute a 'poll tax.'" *Constitutionality of 2005 PA 71*, 740 N.W.2d at 466 (quoting *Rokita*, 458 F. Supp.2d at 827-28).

The fee for a birth certificate that is needed to obtain a photo identification card is not tied to voting. The payment of the fee is not an "electoral standard." *Harper*, 383 U.S. at 666. It is for a document that has independent value separate and apart from voting. Consequently, we agree with the courts that have determined that birth certificate fees are not "sufficiently tied to the requirements of voting as to constitute a 'poll tax.'" *Constitutionality of 2005 PA 71*, 740 N.W.2d at 466 (quoting *Rokita*, 458 F. Supp.2d at 827-28).

BURDEN ON VOTING

The Tennessee Supreme Court observed long ago: "The constitution surrounded the right of suffrage with some inconveniences, and authorized the legislature to attach more. In the exercise of its power, the legislature must be reasonable and just; not imposing impossible or oppressive conditions, else its legislation will be void." *Cook*, 16 S.W. at 473.

There can be no doubt that the right to vote is a fundamental right under the Tennessee Constitution. *Bemis Pentecostal Church v. State*, 731 S.W.2d 897, 901 (Tenn. 1987). A burden on a fundamental right, under Tennessee jurisprudence, must be subjected to strict scrutiny. *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1, 15 (Tenn. 2000). Consequently, any burden placed on that right "must be justified by a compelling State interest." *State v. Smoky Mountain Secrets, Inc.*, 937 S.W.2d 905, 910 (Tenn. 1996). "The least intrusive means must be utilized by the State to achieve its goals and the means chosen must bear a substantial relation to the interest being served by the statute in question." *Bemis Pentecostal Church*, 731 S.W.2d at 903.

Tennessee's interest in the integrity of the election process is compelling. *Id*. at 904. *See also Burson v. Freeman*, 504 U.S. 191, 199 (1992). Fraud in the election process undermines the individual's right to vote. *Burson*, 504 U.S. at 199. Preventing such fraud thus serves a compelling state interest in preserving the fundamental right to vote. *Id*. Election fraud is difficult to detect. *Id*. at 208. Moreover, "[i]n-person voter fraud is, by its very nature, covert." *Constitutionality of 2005 PA 71*, 740 N.W.2d at 458.

The plaintiffs maintain that there is no evidence of voter fraud to justify the passage of the photographic identification requirement. However, none is required. The United States Supreme Court did not require such evidence when evaluating Indiana's photographic

identification law. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 195-96 (2008). The Tenth Circuit has imposed no such requirement. See *The Am. Civil Liberties Union of N. M. v. Santillanes*, 546 F.3d 1313, 1323 (10th Cir. 2008). Neither has Michigan. *See Constitutionality of 2005 PA 71*, 740 N.W.2d at 458 ("[T]here is no requirement that the Legislature 'prove' that significant in-person voter fraud exists before it may permissibly act to prevent it."). "Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively . . . ." *Id*. (quoting *Munro v. Socialists Workers Party*, 479 U.S. 189, 195 (1986)). We find that no such evidence is required for the legislature to act upon what it sees as a problem or a potential problem.

The legislature has determined, pursuant to its authority to secure the integrity of elections, that requiring photographic identification will advance the state's interest in preventing in-person voter fraud. We agree that the requirement bears a substantial relation to the state's interest. Photographic identification is a logical method of protecting the integrity of elections by combating in-person voter fraud. Outside of fingerprints or DNA,[9] a photograph is probably the best way to make sure a voter is the person he or she claims to be.

Showing a photo ID is not a significant intrusion or burden. In our world today, "[p]hoto identification cards currently are needed to board a plane, enter federal buildings, and cash a check." *Crawford*, 553 U.S. at 194 (quoting Commission on Federal Election Reform, *Building Confidence in U.S. Elections*, p. 18 (September 19, 2005)). One recommendation of the Commission on Federal Election Reform was "that voters provide photo identification in order to deter fraud and enhance ballot integrity." *Constitutionality of 2005 PA 71*, 740 N.W.2d at 449.

The photographic identification requirement, in the context of the statutory scheme, serves the State's interest in the integrity of elections in the least intrusive manner possible. Photographic identification is probably the best way of making sure a voter is the person he or she claims to be. While this requirement may impose an extra step in exercising the right to vote for those who have to acquire a photographic identification card, the United States Supreme Court has stated that this burden is not substantial. *Crawford*, 553 U.S. at 198. Lessening the burden of the photographic identification requirement is the broad range of

---

[9] DNA analysis has a heightened accuracy compared to more traditional forms of identification. *State v. Scarborough*, 201 S.W.3d 607, 621 (Tenn. 2006). It would, however, seem to be impractical in the context of voter identification. Fingerprints are unique. *State v. Melson*, 638 S.W.2d 342, 366 (Tenn. 1982). Fingerprint analysis requires exacting training and analysis that would be difficult to implement in the context of a polling place.

-14-

such identifications that the statute makes acceptable;[10] the fact that the voter identification card from the Department of Safety is free;[11] the right to cast a provisional ballot if the voter does not possess the required identification at the time of voting;[12] the fact that the early voting law no longer limits a person desiring to vote to just one day to do so;[13] the right of some voters to vote absentee;[14] and the fact that, under certain circumstances, a photographic identification is not required for in-person voting.[15]

According to the appellants, the significant intrusion or burden of the photo identification requirement arises from the allegedly cumbersome process of acquiring the identification, the cost of acquiring any documentation necessary to apply for the identification, and the time and travel it takes to do all that is necessary to acquire the identification. As the United States Supreme Court has observed,

> A photo identification requirement imposes some burdens on voters that other methods of identification do not share. For example, a voter may lose his photo identification, may have his wallet stolen on the way to the polls, or may not resemble the photo in the identification because he recently grew a beard. Burdens of that sort arising from life's vagaries, however, are neither so serious nor so frequent as to raise any question about the constitutionality of [the Indiana Voter Identification law]; the availability of the right to cast a provisional ballot provides an adequate remedy for problems of that character.

---

[10] Tenn. Code Ann. § 2-7-112(c); *see also* discussion of photographic identification library cards *infra*.

[11] Tenn. Code Ann. § 55-50-336(g).

[12] Tenn. Code Ann. § 2-7-112(e).

[13] Tenn. Code Ann. § 2-6-101.

[14] Tenn. Code Ann. § 2-6-201.

[15] Tenn. Code Ann. § 2-7-112(f) provides:

A voter who is indigent and unable to obtain proof of identification without payment of a fee or who has a religious objection to being photographed shall be required to execute an affidavit of identity on a form provided by the county election commission and then shall be allowed to vote. The affidavit shall state that:

(1) The person executing the affidavit is the same individual who is casting the ballot; and

(2) The affiant is indigent and unable to obtain proof of identification without paying a fee or has a religious objection to being photographed.

*Crawford*, 553 U.S. at 197-98. The court went on to state: "For most voters who need [photographic identification cards], the inconvenience of making a trip to the BMV [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote . . . ." *Id.* at 198.[16] We agree. As the burden of having to acquire a photographic identification card is not substantial, neither does it rise to the level of imposing an "impossible or oppressive" condition on voting, and therefore the legislation requiring it is not void. *Cook,* 16 S.W. at 473.

We find that the requirement that prospective voters present photographic identification to vote in person is not an unconstitutional burden on the right to vote under the Tennessee Constitution.

EQUAL PROTECTION

The appellants maintain that Tenn. Code Ann. § 2-7-112(c) violates Article XI, Sec. 8 of the Tennessee Constitution because it requires photographic identification for in-person voting, but not for absentee voting. Article XI, Sec. 8 guarantees that "all persons similarly circumstanced shall be treated alike." *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn.1993) (quoting *F.S. Royster Guano Co. v. Va.*, 253 U.S. 412, 415 (1920)). Things which are different in fact or opinion are not required by the Tennessee Constitution to be treated the same. *Id*. at 153. Strict scrutiny of the law is required when it interferes with a fundamental right. *Riggs v. Burson*, 941 S.W.2d 44, 52 (Tenn. 1997).

We have established earlier in this opinion that voting is a fundamental right. We have also established that the state's interest in the integrity of its elections is compelling. It cannot be said, however, that in-person and absentee voters are similarly circumstanced. Absentee voting is a fundamentally different process from in-person voting. *The ACLU of N. M.*, 546 F.3d at 1320. Absentee voting has its own set of procedures and safeguards in the election code. Tenn. Code Ann. § 2-6-201 *et seq*. In absentee voting, the voter does not appear before an election official and, therefore, cannot present photographic identification. Such a requirement in the context of absentee voting would be nonsensical. We hold that requiring in-person voters to provide photographic identification while not requiring absentee voters to do so does not violate Article XI, Sec. 8 of the Tennessee Constitution.[17]

---

[16] In addition, we have already noted that "the cost of time and transportation cannot plausibly qualify as a prohibited poll tax because these same 'costs' also result from voter registration and in-person voting requirements, which one would not reasonably construe as a poll tax." *Constitutionality of 2005 PA 71*, 740 N.W.2d at 466. This reasoning applies beyond the poll tax context.

[17] The appellants also suggest that the failure to accept state college student identification cards violates equal protection principles. We need not address that issue, however, because none of the appellants is a student. Consequently, they do not have standing to challenge that provision. Challenges to the student

(continued...)

The list of photograph identification cards that are deemed acceptable as proof of identity at a polling place includes "a valid identification card issued by a branch, department, agency or entity of this state, any other state, or the United States authorized by law to issue personal identification; provided, that such identification card contains a photograph of the voter." Tenn. Code Ann. § 2-7-112(c)(2)(A). Memphis argues that its library cards meet this definition. The State argues that the Memphis library is not a "branch, department, agency or entity of this state."[18]

When construing statutes, courts must give effect to the legislative intent, which is usually ascertained from the natural and ordinary meaning of the words used in the statute itself, without any forced or subtle construction that would limit or extend the language's meaning. *Jones v. Methodist Healthcare*, 83 S.W.3d 739, 741 (Tenn. Ct. App. 2001). In addition, "statutes that are part of a broad statutory scheme should be interpreted *in pari materia* . . . ." *Town of Middleton v. City of Bolivar*, W2011-01592-COA-R3-CV, 2012 WL 2865960, at *13 (Tenn. Ct. App. 2012); *In re Shelby L. B.*, M2010-00879-COA-R9-PT, 2011 WL 1225567, at *5 (Tenn. Ct. App. 2011). The words used in Tenn. Code Ann. § 2-7-112(c)(2)(A) are quite broad, with no modifiers to limit their application. According to Tenn. Code Ann. § 2-1-102, the election code is designed "to regulate the conduct of all elections by the people so that: (1) The freedom and purity of the ballot are secured; . . . and (4) Maximum participation by all citizens in the electoral process is encouraged." Allowing local governments to produce photographic identification cards that can be used as identification for voters at the polls is consistent with and furthers both of these goals.

It has been stated that the failure of a proposed bill to amend the voter identification law to specifically permit counties and municipalities to issue photographic identification cards that could be used as voter identification "strongly suggests" that the law at issue does not allow counties and municipalities to issue such identification. *Turner-Golden v. Hargett*, Civil No 3:12-cv-00765, 2012 WL 3202307, at *6 (U. S. Dist. Ct., M. D. Tenn. Aug. 3, 2012).[19] However, "[t]he refusal to pass an amendment . . . may indicate opposition to that position but could mean that [the legislature] believes the amendment is redundant with the

---

[17](...continued)
identification card exception, to other forms identification and to other portions of the statute not addressed here must wait for another day.

[18] The State does not argue that the Memphis library card does not have a photograph on it or that Memphis is not authorized by law to issue the card.

[19] The federal district court also observed that "[t]he legislative history of the statute is muddled: the parties admit that the 2011 floor debates on the [statute] provide little insight into the legislature's intent." *Id.*

statute as written." *INS v. Chadha*, 462 U.S. 919, 975 n.11 (1983). We cannot derive any concrete legislative intent from the defeat of that legislation.

In addition, Tennessee case law supports finding that the city is "a branch, department, agency or entity of this state." Tenn. Code Ann. § 2-7-112(c)(2)(A). The Tennessee Supreme Court has observed that, "[i]t is beyond question that a Tennessee municipality is an agency of the state exercising a portion of the sovereign power of the state for the public good." *Collierville v. Fayette Cnty. Election Comm'n*, 539 S.W.2d 334, 336 (Tenn. 1976).

We hold that Tenn. Code Ann. § 2-7-112(c)(2)(A) allows the City of Memphis, through its public library, to issue photographic identification library cards that can be used by voters to satisfy the identification requirements of Tenn. Code Ann. § 2-7-112.

In accordance with Tenn. R. App. P. 36(a), an appropriate order will be entered simultaneously with this Opinion requiring the defendants to take immediate action to appropriately notify the Shelby County Election Commission in accordance with this decision.

Costs of appeal are assessed against the appellees.

_____

ANDY D. BENNETT, JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2012 Session

## CITY OF MEMPHIS, TENNESSEE ET AL. v. TRE HARGETT, SECRETARY OF STATE ET AL.

**Chancery Court for Davidson County**
**No. 12-1269-II**

**No. M2012-02141-COA-R3-CV - Filed October 25, 2012**

## JUDGMENT AND ORDER

This cause came on to be heard upon the record on appeal from the Davidson County Chancery Court, the briefs of the parties, and the arguments of counsel. Upon consideration of the entire record, this court finds and concludes that the trial court's judgment should be affirmed in part and reversed in part.

In accordance with the opinion filed contemporaneously with this judgment, it is, therefore, ordered, adjudged, and decreed that the trial court's judgment be and is hereby affirmed in part and reversed in part.

In light of the fact that the period of early voting for the November 6 election is currently underway, Defendants Hargett and Goins are hereby ORDERED to immediately advise the Shelby County Election Commission to accept photo library cards issued by the City of Memphis Public Library as acceptable "evidence of identification" as provided at Tenn. Code Ann. § 2-7-112(c)(2)(A).

The case is remanded to the Chancery Court for Davidson County for enforcement of the judgment and order.

It is further ordered that the costs of this appeal be taxed against appellees, for which execution may issue if necessary.